# IN THE UNITDED STATES DISTRICT COURT
## FOR THE SOUTHERN DISCTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>KIRWAN OFFICES S.à R.L.,<br><br>    Debtor. | Bankruptcy Case No. 16-22321 (RDD)<br><br>On Appeal from the U.S. Bankruptcy Court for the Southern District of New York<br><br>Case No. 1:17-cv-04339-CS<br><br>Case No. 1:17-cv-04340-UA |

## APPELLANT'S BRIEF IN SUPPORT OF APPEAL FROM BANKRUPTCY COURT ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION

**STEPHEN P. LYNCH**
Pro se[1]
Ul. Letnikovskaya #2, Str 3,
P.O. Box #9, Moscow, 115114, Russia
0079295911002



---

[1] This brief was drafted by the Appellant. He was assisted in legal research and analysis by his personal Russian lawyer who is not trained or licensed in US law.

# TABLE OF CONTENTS

Jurisdictional statement ................................................................... 1

Statement of the issues and standard of review ...................................... 2

Statement of the case .................................................................... 5

    Summary ................................................................................ 5

    Parties .................................................................................. 7

    Yukos Finance Litigation ........................................................... 14

    Funding by Appellees ............................................................... 14

    VRCG-VRGP consolidation of control over Appellees and dispute with Appellant................................................................................ 15

    Appellees contrivance of the Debtor's bankruptcy in the US ............................ 18

    Procedural history .................................................................... 20

Summary of the argument ............................................................... 24

Argument ................................................................................ 29

    The Court has discretion to consider arguments   not previously raised by Appellant................................................................................ 29

    Appellant was denied due process as he was not provided with a proper Confirmation Notice ................................................................... 30

    The Confirmation Order is void with respect to Appellant under Article 15 of the Service Convention.................................................................... 37

    Bankruptcy Court lacked subject-matter jurisdiction over the SHA Claims to be able to enjoin them.................................................................... 40

        Bankruptcy court's core jurisdiction .............................................. 40

        Bankruptcy court's related to jurisdiction ...................................... 42

SHA Claims do not fall within core or related to jurisdiction of the Bankruptcy Court..........................................................................................45

If the Bankruptcy Court lacked subject-matter jurisdiction relief from its judgment is mandatory ................................................................................47

Bankruptcy Court lacked constitutional (adjudicative) authority to finally dispose of the SHA Claims through the Exculpations and Injunctions..............48

Exculpations and Injunctions did not satisfy the applicable standard ................52

Motion for Relief under FRBP 9023 and FRCP 59  should have been granted. 55

Motion for Relief under FRBP 9024 and FRCP 60(b)  should have been granted ..........................................................................................................58

Conclusion .........................................................................................................61

# TABLE OF AUTHORITIES

**Cases**

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109 (2d Cir.2005) ......................................... 29

*Austin v. Smith*, 312 F.2d 337 (D.C.Cir.1962) ....................................................... 47

*Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175 (D.C. Cir. 2013) ..................................................................................................... 5, 48

*Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S. Ct. 1493, 131 L.Ed.2d 403 (1995) .............................................................................................. 42, 43, 56

*Citizens Bank v. Decena*, 562 B.R. 202 (E.D.N.Y. 2016) ...................................... 39

*City of New York v. New York, New Haven, & Hartford Railroad Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953) ............................................................ 35

*DeWitt Rehabilitation and Nursing Center, Inc. v. Columbia Cas. Co.*, 464 B.R. 587 (S.D.N.Y 2012) .......................................................................................... 40

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145 (2d Cir. 2014) ...................................................................................................................... 36

*Executive Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 189 L.Ed.2d 83, 82 USLW 4450 (2014) ............................................................................................. 48

*Grand Pier Center LLC v. ATC Group Services, Inc.*, 2007 WL 2973829 (N.D.Ill. 2007) ..................................................................................................................... 33

*Hertz Corp. v. Friend*, 559 U.S. 77, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010) ... 47, 56

*ICICI Bank Limited v. Essar Global Fund Limited*, 565 B.R. 241 (S.D.N.Y. 2017) .............................................................................................. 40, 41, 42

*In re Adelphia Business Solutions, Inc.* 2002 WL 31557665 (Bankr. S.D.N.Y. 2002) ..................................................................................................................... 55

*In re Adelphia Communications Corp.*, 367 B.R. 84 (2007) ................................... 4

*In re American Preferred Prescription, Inc.*, 255 F.3d 87 (2001) ........................... 1

*In re BDC 56 LLC*, 330 F.3d 111 (2nd Cir. 2003)...................................................... 4

*In re Chemtura Corp.*, 439 B.R. 561 (Bankr. S.D.N.Y. 2010)......................... 54, 58

*In re Coudert Bros.*, 2011 WL 7678683 (S.D.N.Y. Nov. 23, 2011) ...................... 41

*In re Coudert Brothers LLP* 2009 WL 2928911 (Bankr. S.D.N.Y. 2009) ............ 55

*In re Cuyahoga Equipment Corp.*, 980 F.2d 110 (2d Cir.1992)...................... 42, 56

*In re Genco Shipping & Trading Limited*, 513 B.R. 233 (Bankr. S.D.N.Y. 2014)54, 58

*In re Johns-Manville Corp.*, 517 F.3d 52 (2d Cir. 2008)........................................ 44

*In re Johns–Manville Corp.*, 801 F.2d 60 (2d Cir.1986) ........................................ 44

*In re Margulies*, 476 B.R. 393 (Bankr. S.D.N.Y 2012)........................................... 43

*In re Millennium Lab Holdings II, LLC*, 2017 WL 1032992 (Del. 2017)44,  50,  51, 52

*In re Murray*, 565 B.R. 527 (S.D.N.Y. 2017)......................................................... 29

*In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993)......................................... 41

*In re Quigley Co., Inc.*, 676 F.3d 45 (2d Cir. 2012) ................................... 43, 53, 56

*In re Refco Inc.*, 505 F.3d 109 (2d Cir. 2007) ........................................................ 43

*In re Robert Plan Corp.*, 777 F.3d 594 (2d Cir. 2015) .................................... 40, 42

*In re Sabbun*, 556 B.R. 383 (Bankr. C.D. Ill. 2016)............................................... 35

*In re South African Apartheid Litigation* 643 F.Supp.2d 423 (S.D.N.Y. 2009)..... 39

*In re Teligent, Inc.*, 326 B.R. 219 (2005) ......................................................... 4, 59

*In re U.S. Lines, Inc.*, 197 F.3d 631 (2d Cir. 1999) ............................ 41, 42, 46, 56

*In re Welsh*, 540 B.R. 672 (E.D. Ark. 2015) .......................................................... 35

*In re Zale Corp.*, 62 F.3d 746 (5th Cir.1995) ........................................................ 43

*Metromedia Fiber Network Inc.*, 416 F.3d 136 (2d Cir. 2005) ........................ 53, 56

*Mullane v. Cent. Hanover Bank & Trust Co.* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ........................................................................................ 35

*Orix Financial Services v. Phipps* ................................................................ 58

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984) ........................................ 42, 52

*ResCap Liquidating Trust v. PHH Mortg. Corp.*, 518 B.R. 259 (S.D.N.Y. 2014). 49

*Schumacher v. White*, 429 B.R. 400 (E.D.N.Y. 2010) .......................................... 43

*Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) ..... 49, 56

*Stone v. I.N.S.*, 514 U.S. 386, 115 S.Ct. 1537 131 L.Ed.2d 465 (1995). .................. 2

*United States v. Murphy*, No. 2007 WL 2973584 (E.D.N.Y. Sept. 28, 2007) ....... 39

*United Student Aid Funds, Inc. v. Espinosa* 130 S.Ct. 1367 ................................ 58

*Universal Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83 (2d Cir. 2005) ...................................................................................... 41

*Wellness Intern. Network, Ltd. v. Sharif* 135 S.Ct. 1932, 191 L.Ed.2d 911, 83 USLW 4337 (2015) ............................................................... 48, 56, 60

*Zhang v. Baidu.com Inc.* 932 F.Supp.2d 561 (S.D.N.Y 2013) .............................. 39

**Statutes**

28 U.S.C. § 157 ................................................................................ 40, 42, 46

28 U.S.C. §158 .................................................................................................. 2

**Rules**

11 U.S.C. §105 .......................................................................................... 27, 43

FRBP 2002 ...................................................................................... passim

FRBP 3017 ...................................................................................... passim

FRBP 7001 ............................................................................................ 34

FRBP 9023 ............................................................................ 28, 55, 57

FRBP 9024.................................................................... 28, 29, 55

FRCP 4........................................................................ 25, 33, 37

FRCP 59...................................................................... 28, 55, 57

FRCP 60............................................................................ passim

*In re AMC Realty Corp.*, 270 B.R. 132 (Bankr. S.D.N.Y. 2001) ........................... 59

Local Rule 9006................................................................... 32

**Treatises**

Hague Convention on Service Abroad of Judicial and Extrajudicial Documents . 25, 37

Appellant Stephen P. Lynch respectfully submits this brief in support of his consolidated appeal from:

(a)    the *Findings of Fact, Conclusions of Law and Order Approving and Confirming the Combined First Amended Plan of Reorganization and Disclosure Statement of Kirwan Offices S.à r.l.* entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on March 21, 2017 (811-851[2] (BDI 131)) (the "Confirmation Order"); and

(b)    the *Order Denying Motion of Stephen Lynch for (1) Relief from the Confirmation Order or, Alternatively, for New Trial or, Alternatively, for Alteration or Amendment of the Confirmation Order and (2) Stay of Enforcement of the Confirmation Order Pending Determination of the Motion*, entered by the Bankruptcy Court on April 17, 2017 (1001-1002 (BDI 165)) ("Order Denying Relief").

## JURISDICTIONAL STATEMENT

The Confirmation Order is a final order of the Bankruptcy Court, *In re American Preferred Prescription, Inc.*, 255 F.3d 87, 92 (2001). However certain post-trial motions that toll the running of time for an appeal render the underlying judgment non-final. *Stone v. I.N.S.*, 514 U.S. 386, 402-403 115 S.Ct. 1537 131

---

[2] References are to page numbers in the Appendix to Appellant's Brief.

1

L.Ed.2d 465 (1995). Such motions give rise to only one appeal in which all matters are reviewed. *Id.* In addition denial of motion for relief from judgment is appealable as a separate final order, and if the original appeal is still pending, the court can consolidate proceedings. *Id* at 401.

This Court has appellate jurisdiction over the Confirmation Order as well as the Order Denying Relief. 28 U.S.C. §158(a)(1).

On April 4, 2017, within 14 days from the Confirmation Order, Appellant filed his Motion for (1) Relief from the Confirmation Order or, alternatively, for New Trial or, alternatively, for Alteration or Amendment of the Confirmation Order, and (2) Stay of Enforcement of the Confirmation Order Pending Determination of the Motion (924-950 (BDI 148)) (the "Motion for Relief"). On April 28, 2017, within 14 days from the Order Denying Relief, Appellant filed notices of appeal from the Confirmation Order (1074-1075 (BDI 171)) and from the Order Denying Relief (A1076-1077 (BDI 172)).

**STATEMENT OF THE ISSUES AND STANDARD OF REVIEW**

The following issues are presented on this consolidated appeal:

1.     Whether Stephen P. Lynch was given adequate and proper notice of the time fixed for filing objections to and the hearing to consider approval and confirmation of the Combined First Amended Plan of Reorganization and Disclosure Statement of Kirwan Offices S.à r.l (513-629 (BDI 110)) (the "Plan")

2

and whether he was given sufficient time to adequately contest the Plan consistent with his due process rights.

2.      Whether the Bankruptcy Court had subject-matter jurisdiction to approve the exculpation and injunction provisions in the Confirmation Order and the Plan (the "Exculpations and Injunctions") in relation to Stephen P. Lynch's claims against Appellees and other third parties under the Shareholders' Agreement dated August 30, 2007 (the "SHA").

3.      Whether the Bankruptcy Court had adjudicatory authority to approve the Exculpations and Injunction in relation to Stephen P. Lynch' claims against Appellees and other third parties under the SHA (the "SHA Claims").

4.      Whether the Exculpations and Injunctions in relation to the SHA Claims satisfied the standards that apply to such provisions by the courts in the Second Circuit.

5.      Whether the Bankruptcy Court should have granted Appellant's motion for relief from the Exculpations and Injunctions under FRBP 9024.

6.      Whether the Bankruptcy Court should have granted Appellant's motion for a new trial on the Exculpations and Injunctions under FRBP 9023.

Issues 1 to 4 involve both legal conclusions and factual findings. Issue 5 involves a factual finding. Issues 5 and 6 involve exercise of discretion by the Bankruptcy Court, except where they are concerned with relief from judgment due

3

to lack of due process or jurisdiction, in which case they involve questions of law and fact.

A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *In re Adelphia Communications Corp.*, 367 B.R. 84, 90-91 (2007). In case of mixed questions of law and fact, the Court reviews findings of fact under the 'clearly erroneous standard' and the conclusions of law de novo. *In re Teligent, Inc.*, 326 B.R. 219, 224 (2005). A finding of fact is clearly erroneous "if the court is left with the definite and firm conviction that a mistake has been committed." *In re Adelphia Communications Corp.*, 367 B.R. 90.

The denial of a motion for reconsideration under FRBP 9023 is reviewed for an abuse of discretion. *In re BDC 56 LLC*, 330 F.3d 111, 123 (2nd Cir. 2003). Bankruptcy court's denial of motion for relief from judgment under FRBP 9024 may be reversed only for abuse of discretion. *In re Teligent, Inc.*, 326 B.R. 224. Bankruptcy court abuses its discretion when it arrives at a decision that rests on error of law or clearly erroneous factual finding, or a decision that, while not necessarily the product of legal error or clearly erroneous factual finding, cannot be located within the range of permissible decisions. *Id.*

Although Rule 60(b) motions are generally committed to the discretion of the district court, and thus subject to review for abuse of discretion, there is no question of discretion on the part of the court when a motion is under Rule

4

60(b)(4); if the judgment is void, relief is mandatory. *Bell Helicopter Textron, Inc.*
*v. Islamic Republic of Iran*, 734 F.3d 1175, 1179 (D.C. Cir. 2013) (citation and
quotation marks omitted).

## STATEMENT OF THE CASE

### SUMMARY

This is a case in which Appellees[3] who were the Debtor's super majority
shareholders and who, for tax reasons had provided their shareholder equity in the
form of loans, contrived the Debtor's[4] insolvency and shamelessly manufactured
jurisdiction of a bankruptcy in a US court in order to achieve a goal that they could
not otherwise achieve because of their contractual agreement with Appellant (the
Shareholders Agreement).  Set up as offshore special purpose vehicles designed to
avoid, inter alia, US regulation and taxation and without any employees or any
presence in the US, Appellees, in violation of the debtor's corporate governance
rules and without Appellant's (the Debtor's minority shareholder) knowledge,
contrived jurisdiction of the Westchester Division of the US S.D.N.Y Bankruptcy
Court.

---

[3] Appellees were also the only petitioning creditors and Plan proponents.

[4] The Debtor never appeared in the case, even though it appointed counsel in late
January 2017.

There Appellees, acting as purported creditors, achieved their only goal of the bankruptcy, "getting rid of Lynch [Appellant]" through a staged reorganization and the wipeout of the minority shareholder's valuable 'golden share'. Their goal achieved Appellees left the US having paid no US taxes or employed any US citizen they gamed the Bankruptcy court to take away from the Appellant, a US citizen, a valuable asset – the myriad of promises Appellees made to Appellant under the SHA.[5]

Incredibly the only person affected by the bankruptcy was the Appellant, nothing changed at the Debtor except that the Creditors / Appellees (who are ultimately controlled by one beneficiary) become the sole shareholders.   In becoming sole shareholders they rid themselves of the promises they had made to Appellant in return for his contribution to the Debtor of its only subsidiary.  In this process Appellees' and their counsel's conduct is one in which they act as if the Bankruptcy Court is their personal tool, all rules and procedures to be enforced to their benefit while none are afforded to Appellant, the only party who is actually a US citizen. They contend Appellee's behavior as a mockery of the court but it is

---

[5] As a consequence of taking the Appellant's valuable share, the Bankruptcy court left the Appellant vulnerable to outstanding claims in the hundreds of millions against him and the Debtor's subsidiary.

this contrived and fake bankruptcy by 'off-shore island SPVs' that is the mockery and never intended by Congress.

Appellant wishes to pursue his SHA Claims but is barred by a permanent, global, over-reaching injunction preventing him from ever having his claims heard. This is an injustice and should be overturned.

### PARTIES

From August 30, 2007 until April 18, 2017 Appellant was a class C Shareholder of the Debtor and Appellees were Debtor's class A and class B Shareholders (217-218 (BDI 62) ¶¶1-3). The Debtor, a Luxembourg company, was an investment vehicle of Appellant and Appellees (219 ¶7).

In August 2007 Appellant organized Renaissance Capital and VR Capital Group Limited and himself (the "Consortium") to come together to consider the acquisition of 100% of shares in Yukos Finance B.V. ("Yukos Finance"), one of the largest foreign subsidiaries of bankrupt Yukos Oil Company ("Yukos Oil"), to be auctioned off by Yukos Oil's bankruptcy receiver on 15 August 2007.

At the time Renaissance Capital was one of the largest investment banks in Russia.  It consisted of a group of companies ultimately owned by Bermuda-based Renaissance Holdings Management Limited ("RHML") (1105-1115).

VR Capital Group Limited ("VRCG") is an asset management company based in Cayman Islands. Through its Cayman wholly owned subsidiary VR

Advisory Service Limited ("VRAS") VRCG manages VR Global Partners, L.P. ("VRGP"), a multi-billion Cayman Islands investment fund (218-219 ¶¶4, 6).

Despite a net asset value of Yukos Finance of approximately US$1.6 billion its shares were auctioned for approximately US$309 million (224 ¶21), because Yukos Finance was a party to complex on-going litigation (255-256 recitals "I" and "J") and its shares were subject to several attachments of creditors of Yukos Oil in the Netherlands (254-255 recitals "C", "D", "E", "F", "G").

RHML and VRCG-VRGP believed themselves capable of resolving the foreign litigation involving Yukos Finance (221-223 ¶¶15-20) and agreed to finance the acquisition of Yukos Finance.

On 14 August 2007 OOO[6] Monte-Valle ("Monte-Valle"), Appellant's Russian company, acquired OOO Promneftstroy ("PNS") a company that was registered for the auction and had paid the required deposit ($60,000,000) (222 ¶17).

On 15 August 2007 Appellant attended the auction on behalf of PNS and made the winning bid of circa US$309 million (224 ¶21). On 20 August 2007 PNS entered into the Yukos Finance Share Purchase Agreement ("Yukos Finance

---

[6] "OOO" is a Russian abbreviation for "LLC" (limited liability company).

SPA") with the bankruptcy receiver of Yukos Oil to purchase the Yukos Finance shares (224 ¶23).

Contemporaneously with PNS entering into the Yukos Finance SPA the Consortium members began to negotiate an agreement between themselves to document their participation in Yukos Finance (224-225 ¶25). Guided by tax considerations RHML and VRCG-VRGP insisted on using a Luxembourg company as the Consortium's investment vehicle (165 (BDI 34) ¶¶5, 6, A 199-201) and structuring their investment in that company as 85% interest bearing debt, 14% interest free debt, 1% equity, so as to avoid 1% Luxembourg capital tax (224 ¶24, A 166-167 ¶¶9-13, A 204-214), but agreed to waive the Loans (SHA Clause 5.6). On August 30, 2007 Appellant, Appellees,[7] the Debtor, VRGP and RHML entered into the SHA (224-225 ¶25, A 49-99).

Pursuant to the SHA (49-99) Appellees capitalized the Debtor with $2,482,929 as share capital and $247,500,000 as Loans in consideration for 2,482,929 newly issued A and B Shares in the Debtor (SHA Clause 2.1 and Schedule 5).

---

[7] Appellees were themselves investment vehicles of RHML (Mascini Holdings Limited ("Mascini")) and VRCG-VRGP (Lapidem Limited ("Lapidem")). RHML had a 27% co-investor in Mascini and VRCG-VRGP had a 46% co-investor in Lapidem.

Appellant procured transfer of PNS[8] to the Debtor for a nominal price of approximately $300 in consideration for one C Share in the Debtor (SHA Clauses 2.1.4, 4.1.1) and a promise by Appellees (not the Debtor) to pay Appellant 10% of the Net Gain (SHA Clause 12.5) that would accrue to Appellees[9] as a result of their participation in the Debtor, acquisition of Yukos Finance by PNS, transfer of Yukos Finance by PNS to the Debtor (SHA Clause 4.3.1) and distribution of Yukos Finance assets to the Debtor (SHA Clause 11.4).

Appellees' and in certain instances their controlling shareholders, VRGP and RHML, also promised Appellant:

(a)    to procure that PNS takes all actions, steps and proceedings legally available to it in order to acquire legal registered title to the entire issued share capital of Yukos Finance (SHA Clause 5.3);

(b)    not interfere with PNS' actions, steps and proceedings directed at the acquisition of the legal registered title to the Yukos Finance shares (SHA Clause 5.4);

_____

[8] PNS already had the right to acquire the entire issued share capital in Yukos Finance pursuant to the Yukos Finance SPA (SHA recital "D")

[9] Schedule 4 of the SHA defines Net Gain as "*the return achieved by the Financing Shareholders* [i.e. Appellees] *after deducting*" their capital contributions, including subscription monies and monies provided to the Debtor under the loan agreements in accordance with Clauses 2 and 10 of the SHA and certain other amounts.

10

(c)      to procure that the Debtor and PNS protect and maintain their assets with a view to maximizing the Net Gain(s) which may accrue to Appellees (SHA Clause 5.5.4);

(d)      to procure that the Debtor complies with the terms of the Loans[10] (SHA Clause 5.6);

(e)      not to enter into any arrangement with the Debtor, PNS, Yukos Finance and its subsidiaries which has the effect of depriving Appellant of any part of the economic return to which he is entitled as contemplated by Clause 12 of the SHA (SHA Clause 12.11);

(f)      that all sums received by the Debtor (by way of capital or income) shall be allocated to and paid by way of consideration for the repurchase by the Debtor of its shares to Appellants pro rata to the number of shares they held; and

(g)      that no amount would be paid by way of Return[11] unless the rights of Appellant had first been satisfied in full as contemplated by Clause 12.

---

[10] These are the initial loans pursuant to which Appellees paid $247,500,000 to the Debtor on August 30, 2007.

[11] The SHA defines Return as any payment of capital or income (or any other agreement or arrangement that involves any payment or transfer of rights or

Appellees waived any remedies that they might have in relation to any non-payment or non-performance by the Debtor under the Loans (SHA Clause 5.6).

To secure their promises to Appellant, Appellees, gave Appellant the C Share and certain appointment and control rights. The sole purpose of the C Share was to enable Appellant to have the appointment and control rights through his nominal participation in the Debtor's capital.[12]

Appointment rights given to Appellant included:

(a)  the right to appoint a class C manager to the board of directors of the Debtor (SHA Clause 6.2);

(b)  the exclusive right to nominate a person to be appointed the General Director of PNS – the only person who can act (or authorize others to act) on behalf of PNS (SHA Clause 7.1.2);

---

economic benefit to an Appellee or its Affiliate) by or on behalf of any Group Company (including the Debtor) to an Appellee or its Affiliate, including without limitation payment by way of dividend, repurchase of Shares, interest, or a distribution made on the winding-up of the Debtor.

[12] The C Share, being one of 2,500,001 shares in the Debtor entitled Appellant to 1/2,500,001 of profit or assets available for distribution of the Debtor. A profit of $1,000,000,000 would result in Appellant receiving a distribution on his C Share from the Debtor of only $400.

12

(c)    the right to have appointment and control rights in relation to Yukos Finance upon its transfer to the Debtor materially equivalent to then existing powers of the General Director of PNS (SHA Clause 7.1.4).

Appellant's control rights included the right to veto decisions of the Debtor's shareholders on the Unanimous Shareholder Reserved Matters (SHA Clause 9 and Schedule 3 Part 3), including, inter alia, decisions pertaining to:

(d)    payment of any Return to Appellees;

(e)    Debtor's liquidation, placing it into receivership or its administration;

(f)    any change to the Debtor's charter the effect of which would be to alter the rights attaching to the C Share;

(g)    issue of shares, debentures, warrants, options or any capital reorganization or other corporate action the effect of which would be to alter the rights attaching to the C Share; and

(h)    the sale or disposition of Yukos Finance (including any transfer of control);

In addition, VRGP and RHML guaranteed proper performance by Appellees of their obligations to Appellant under Clause 12 of the SHA, including the payment of 10% of the Net Gain, and agreed to indemnify Appellant on demand for their own breaches of the SHA (SHA Clauses 19.1, 19.5, 20.1, 20.5).

13

The above rights and promises, including the promise of 10% of the Net Gain, existed while Appellant held his C Share and while the SHA was in effect (SHA Clauses 3, 23.1, 23.3).

## YUKOS FINANCE LITIGATION

After PNS had paid the balance of the auction price for Yukos Finance the bankruptcy receiver of Yukos Oil appointed Appellant as one of two directors of Yukos Finance (271-272) and thereafter transferred the Yukos Finance shares to PNS under the Deed of Transfer of the Shares subject to the Attachments and of the Rights dated September 10, 2007 (273-282).

In order for PNS to become the registered legal owner of Yukos Finance shares it had to be registered as their owner in the register of shareholders of Yukos Finance.  This did not happen because of the litigation already underway at the time in the Netherlands (230-232 ¶¶ 41-44).

On 31 October 2007 the Dutch court declared null and void all resolutions of the bankruptcy receiver of Yukos Oil in relation to Yukos Finance. PNS appealed. On May 9, 2017 the Amsterdam Court of Appeal dismissed PNS' appeal for the second time.  The May 9, 2017 Amsterdam Court of Appeal ruling is appealable to the Dutch Supreme Court as of right and PNS's Dutch lawyers have advised that they are preparing an appeal for filing on or before August 9, 2017.

14

### FUNDING BY APPELLEES

Defined in the SHA as "Financing Shareholders", Appellees provided all of the funding for PNS's acquisition of Yukos Finance, including the repayment of the $60 million auction deposit.  From December 2007 to August 2015 Appellees additionally provided $32,555,000 to the Debtor to fund mainly the litigation expenses in relation to Yukos Finance (227-228 ¶¶35-36).

All loan agreements between Appellees and the Debtor contain substantially the same terms as to their repayment:

> "*Repayment: The Loan will be repaid in full by the Borrower [Kirwan] on either (i) the date falling 365 days after the date of a notice from the Lender [Lapidem or Mascini respectively] to the Borrower requesting repayment of the Loan (the "Repayment Date") or, if the parties agree, on any date falling before the Repayment Date; or (ii) if earlier, the date upon which an insolvency event (as determined by the Lender) occurs in relation to the Borrower.*"

### VRCG-VRGP CONSOLIDATION OF CONTROL OVER APPELLEES AND DISPUTE WITH APPELLANT

In early 2013 VRGP and VRCG acquired the majority shareholding in Mascini from RHML thus becoming the Debtor's indirect controlling shareholder (229 ¶38). By November 2013 all of the Debtor's board of directors were

15

employees or agents of VRCG and/or its affiliates and included Richard Deitz, the president and founder of VRCG (218 ¶5). Deitz who was the ultimate decision-maker at VRCG acted to solely run the Debtor (through his defacto control of the other VRCG directors of the Debtor) and determine its litigation strategy in disregard of Appellant's interests.

Deitz wanted PNS to settle the Dutch litigation at cost, which would provide a windfall to VRCG-VRGP,[13] but would mean no Net Gain for Appellees and subsequently no payout to Appellant. Absent compensation for waiver of his rights, Appellant indicated he would veto and block a settlement. The Appellees and the Debtor under Deitz's control made several attempts to reorganize the corporate governance of PNS, so as to void Appellant's control rights in relation to PNS. On four occasions Appellant blocked these actions by threat of LCIA arbitration to force compliance with the SHA and in 2014 he commenced an LCIA arbitration that was decided in the Appellant's favor in July 2015 (243-245 ¶¶89-98, A 156-158 ¶165).

However, the dispute between Appellant and Deitz who represented Appellees continued and there was a fifth attempt to seize de facto control of PNS

---

[13] VRCG-VRGP acquired an additional 40% of the Debtor from RHML for a nominal price.

by Debtor's granting of broad powers of attorney to Deitz and another VR officer. Appellant thwarted this by preparing yet another LCIA request. Finally Deitz realized he had no chance in the agreed jurisdiction (the LCIA) and instead hatched a scheme to use the Westchester Division of the Bankruptcy Court. To do this Appellees manufactured US jurisdiction and filed for the Debtor's bankruptcy so to "get rid of" Appellant (22 (BDI 21) ¶40) for "free" instead of paying Appellant for his rights.

The SHA was terminable only by unanimous consent or unanimous (shareholders) resolution of Appellant and Appellees or by a binding order for the winding-up or reorganization of the Debtor. Appellant's rights thereunder would also terminate upon cancellation of his C Share (SHA Clauses 3 and 23.3). Instead of carrying through with the agreed steps in the SHA, Appellees organized an end-run through an orchestrated bankruptcy process. In that process the Appellees sought to discharge their own (and not the Debtor's) promises to Appellant under the SHA and to do so without sustaining any liability for its breaches through the Exculpations and Injunctions.

After providing the Debtor with $4,000,000 in August 2015 Appellees decided to temporarily stop funding in November 2015 without any notice to Appellant (399 (BDI 81) ¶10). Appellees' suspension of funding was aimed only to

17

create an insolvency event, call their loans to the Debtor instantly due and file for bankruptcy.[14]

Numerous times Deitz had assured Appellant of his firm's financing capacity. In March 2015 during the pendency of the LCIA arbitration Appellees through their counsel Dechert LLP assured Appellant that it was "*entirely unnecessary for PNS to seek or obtain third party litigation funding*" because Appellees had "*every intention and ability to continue to fund ... PNS's legal expenses through to the conclusion of the YF* [Yukos Finance] *litigation*" (283-286). Deitz repeated this assurance in a declaration to the Bankruptcy Court right before the confirmation hearing (706-707 (BDI 123) ¶¶52, 53).

### APPELLEES CONTRIVANCE OF THE DEBTOR'S BANKRUPTCY IN THE US

In October 2015 VRCG-VRGP caused the Debtor to engage the New York office of Akin Gump to represent VRCG, Deitz and a director of VRCG Jeffrey Johnson ("Johnson") in section 1782 proceedings before this Court (1:15-mc-00325-LAK) (238-240 ¶¶64-74). This was for services provided to Deitz, Johnson, VRCG and not the Debtor. Emile du Toit ("du Toit"), a director of VRCG, both Appellees and the Debtor, signed the engagement letter with Akin Gump without

---

[14] Appellees resumed paying Debtor's bills shortly after the Bankruptcy Court granted their petition.

any shareholders' or even board of directors' resolution as required by the SHA and the Debtor's charter (295-297). Appellees in control of the Debtor's bank accounts and without Appellant's knowledge further caused the Debtor to pay a $150,000 retainer to Akin Gump (238 ¶65).[15] They then used the unpaid Akin Gump invoices totaling $174,530 (239 ¶71), only $24,530 above the retainer (239 ¶73), to declare an insolvency event in relation to the Debtor and their shareholder loans to the Debtor immediately repayable (291-293).[16]

Similarly, on November 6, 2015 through du Toit, Appellees caused the Debtor to enter into a Settlement, Cooperation and Retainer Agreement ("Settlement Agreement") and pay a New York based law firm Mandel Bhandari a retainer of $100,000 towards legal services provided to one Daniel Feldman in an action before this Court (1:15-cv-04964-LAK) (240 ¶¶76-77).   Again Du Toit alone signed the Settlement Agreement on behalf of the Debtor without any shareholders or board of directors' resolution of the Debtor as required by the SHA and the Debtor's charter.

---

[15] It also seems that Appellees purposely delayed payment of Akin Gump invoices so that the latter would ask for a retainer.

[16] VRCG's general counsel did not allow Akin Gump to apply the retainer against the issued invoices (294).

Through their directors on the Debtor's board and in secrecy from Appellant, Appellees made the Debtor deplete its funds while temporarily suspending additional funding of the Debtor. They did this to declare an insolvency event on the basis of the $24,350 shortfall, and demand immediate repayment of their loans on the basis of the staged insolvency event (242 ¶84, 291-293) so that they could file an involuntary bankruptcy petition (1-6 (BDI 1)).

All these machinations had one purpose – Appellees ridding themselves of their SHA promises to Appellant without any payment or liability to Appellant. There was no genuine bankruptcy purpose, as no true debtor – creditor relationship was or had to be adjusted: no law firm that invoiced the Debtor, PNS or VRGP demanded payment and all were fully paid with the funds Appellees provided to the Debtor post bankruptcy, Appellees loans to the Debtor did not get repaid as a result of the bankruptcy,[17] Appellees funded the Debtor as they had done in the past and as they assured Appellant they would do in March 2015.  The only manifest result of this contrived bankruptcy was that Appellees got rid of the Appellant. Consequently they acquired the ability to cause PNS to settle the Dutch

_____

[17] That these loans got extended is irrelevant as they were never due in the first place and as among other reasons there was an agreement between the SHA parties that these loans could only be repaid (subject to SHA Clause 11.1) out of funds the Debtor would receive from Yukos Finance.

litigation in which it participates without having to pay Appellant for a waiver of his rights under the SHA.

## PROCEDURAL HISTORY

On 6 April 2016 Appellant filed a Motion for Intervention and Dismissal, Abstention or Stay (7-14) ("Motion for Intervention"), which pursuant to the parties' Joint Stipulation (160-162 (BDI 32)) was partially heard on June 17, 2016 and, to the extent heard, denied (215-216 (BDI 43)). The remaining part of the Appellant's motion pertaining to dismissal or abstention under 11 U.S.C. §1112 or §305 was heard on January 27, 2017 and also denied (419-420 (BDI 92)).

On February 15, 2017 Appellees filed their proposed plan of reorganization of the Debtor (421-468 (BDI 97)).  The same day they filed a Motion For Entry Of An Order Establishing Streamlined Procedures With Respect To Plan Confirmation (469-490 (BDI 98)) ("Streamline Motion"). On February 22, 2017 Appellant's counsel filed a motion to withdraw (505-508 (BDI 103 and 104)).

The Streamline Motion was heard and granted on February 27, 2017 (652-682 (BDI 118)).  The transcript of the hearing (656) erroneously records the presence of the Appellant and Mr. Sandakov ("Sandakov") as Appellant's counsel at the hearing. Neither Appellant, nor Sandakov participated in the telephonic hearing on February 27, 2017 nor was Sandakov Appellant's counsel of record in

the bankruptcy case. [18] Since February 22, 2017 Appellant was simply unrepresented in the bankruptcy case.

On February 28, 2017 Appellees filed the Plan (513-629 (BDI 110)).

On March 6, 2017 Appellant by notice to Appellees, VRGP and RHML terminated the SHA for its anticipatory repudiatory breach (806-809 (BDI 123 Exhibit G) and requested LCIA arbitration of his claims against Appellees and VRGP for damages for breach of the SHA various Clauses (724-802 (BDI 123 Exhibit D)).

On March 20, 2017 a confirmation hearing took place, at which only Appellees were present (apart from the Office of the US Trustee and Yukos International UK B.V., a subsidiary of Yukos Finance, as a purported party in interest), and the Bankruptcy Court approved the Plan with its own suggested amendments (875-921 (BDI 145)). On March 21, 2017 the Bankruptcy Court entered the Confirmation Order approving the Plan as amended at the hearing.

The Confirmation Order and the Plan:

(a)    define "Exculpated Claim" to include any claim related to any

act or omission in connection with Appellees, VRCG and their Affiliates in

---

[18] Andrei Sandakov is Appellant's long time Russian lawyer. He is not licensed to practice in any state in the United States and he has never been engaged to represent Appellant in the United States.

or out of court restructuring efforts, Appellees' determination to declare their loans to the Debtor due, the filing of the involuntary petition, the filing of the Plan, the pursuit of confirmation and implementation of the Plan;

(b)   provide for release and exculpation of Released Parties, including Appellees, VRGP and RHML and other third parties from Exculpated Claims;

(c)   enjoin Appellant from commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Exculpated Claims ("Exculpations and Injunctions").

On March 24, 2017 Appellees filed their Motion to enforce Exculpations and Injunctions against Appellant (852-866 (BDI 133)) asserting that the Confirmation Order enjoined Appellant from continuing with the LCIA arbitration. Appellant objected (867-874 (BDI 144)) on the grounds that there was no violation of the Confirmation Order because his claims against Appellees were only enjoined on and from the Effective Date as determined under the Plan and that such date had not occurred. Following Appellant's objections Appellees filed their notice of occurrence of the Effective Date (922-923 (BDI 146)). Appellant withdrew his arbitration request without prejudice on March 29, 2017 and the LCIA closed the matter (956, 960 (BDI 157 Exhibit 1 and 3)).

23

On April 4, 2017 Appellant filed his Motion for Relief, which the Bankruptcy Court heard and denied on April 14, 2017, entering the Order Denying Relief on April 17, 2017. Appellant appealed from the Confirmation Order and the Order Denying Relief on April 28, 2017.

On June 27, 2017 Appellant moved the Bankruptcy Court for correction of the record pursuant to Rule 8009(e)(2)(B) FRBP in connection with his and Sandakov's alleged presence at the February 27, 2017 hearing (1089-1104 (BDI 187)).[19]

## SUMMARY OF THE ARGUMENT

This Court as appellate court has discretion to consider arguments raised by the Appellant on appeal for the first time and should exercise its discretion in order to avoid manifest injustice to the Appellant and because the Appellant's arguments pertain to issues of law and do not require additional fact finding.  And further because the Bankruptcy Court had a duty to consider whether it had jurisdiction over the SHA Claims on its own motion, but failed to do so and because relief is mandatory where a judgment is void for want of jurisdiction or lack of due process.

---

[19] Appellant did not designate this motion as part of the record because he expects the Bankruptcy Court to correct the record and transmit the corrected record to the District Court.

Appellees failed to give Appellant notice of the time fixed to file objections to the Plan and of the confirmation hearing (the "Confirmation Notice") because they did not mail the Confirmation Notice to Appellant in accordance with FRBP Rules 3017(a) and (d), 2002(b) and (g).

By shortening the notice period of the Confirmation Notice by 11 days Appellees also failed to give Appellant sufficient time to object to the Plan in violation of FRBP Rules 3017(a) and (d), 2002(b) and Article 15 of the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents (the "Service Convention").

Due to these violations the Appellant was not afforded due process and accordingly the Confirmation Order is void vis-à-vis Appellant and must be vacated or the Exculpations and Injunctions must be stricken from the Confirmation Order. Alternatively, Appellant should be relieved from the injunctive effect of the Confirmation Order under Rules 60(b)(4) of the Federal Rules of Civil Procedure ("FRCP").

Using an alternative method under FRCP Rule 4(f)(3) to send the Plan and the Confirmation Notice to Appellant by email was contrary to FRBP 3017 and 2002, which prevailed.

Whether or not FRCP Rule 4(f)(3) applied to service of the Plan and of the Confirmation Notice, it could not be used to evade the prohibition on entry of a

default judgment under Article 15 of the Service Convention. Courts order alternative service under FRCP Rule 4(f)(3) as means of according the person to be served due process after all three elements of the second paragraph of Article 15 of the Service Convention are satisfied.

The Bankruptcy Court failed to establish satisfaction of all of the necessary elements of Article 15 of the Service Convention. The Bankruptcy Court had no jurisdiction to adjudicate on Appellant's rights in default of his presence in accordance with Article 15 of the Service Convention. The Confirmation Order is void vis-à-vis Appellant for want of jurisdiction to enter a default judgment and should be vacated or the Exculpations and Injunctions should be stricken from the Confirmation Order. Alternatively, Appellant should be relieved from the injunctive effect of the Confirmation Order under FRCP Rule 60(b)(4).

The Bankruptcy Court did not have subject matter jurisdiction to hear and decide the SHA Claims because these claims did not fall within either core or related to jurisdiction of the Bankruptcy Court. The SHA claims did not fall within the core jurisdiction because they were not products of bankruptcy law and existed outside of bankruptcy law and the bankruptcy case. The SHA Claims arose under a 2007 pre-petition contract – the SHA and were neither unique to, nor uniquely affected by the bankruptcy proceeding. Appellees could have committed the same

26

breaches of the SHA without the bankruptcy case. They needed the Bankruptcy Case only for the Exculpations and Injunctions.

The SHA Claims did not fall within the related to jurisdiction of the Bankruptcy Court because they did not have any conceivable effect on the estate. The SHA Claims were not against the Debtor and their outcome could not possibly alter the Debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and did not in any way impact upon the handling and administration of the bankrupt estate. The Bankruptcy Court could not use 11 U.S.C. §105 to create jurisdiction, which it did not statutorily have in the first place.

As the Bankruptcy Court did not have subject-matter jurisdiction over the SHA Claims it could not dispose of them with the Exculpations and Injunctions. Accordingly the Confirmation Order is void vis-à-vis Appellant and should be vacated or the Exculpations and Injunctions should be stricken from the Confirmation Order. Alternatively, Appellant should be relieved from the injunctive effect of the Confirmation Order under FRCP Rule 60(b)(4).

The Bankruptcy Court also lacked adjudicatory (constitutional) authority as non-Article III judge to decide on the SHA Claims, even if, arguendo, these claims fell within its subject-matter jurisdiction, because these claims were exclusively between non-debtors, as such they could only fall within the related to jurisdiction of the Bankruptcy Court and only if they had a conceivable effect on the res of the

27

estate. Appellant never agreed to have the SHA Claims adjudicated by the Bankruptcy Court, whether expressly or impliedly. Accordingly the Confirmation Order is void vis-à-vis Appellant and should be vacated or the Exculpations and Injunctions should be stricken from the Confirmation Order. Alternatively, Appellant should be relieved from the injunctive effect of the Confirmation Order under FRCP Rule 60(b)(4).

The Exculpations and Injunctions did not meet the Metromedia standard that applies in the Second Circuit: there were no unusual or unique circumstances that made the Exculpations and Injunctions necessary to a successful implementation of the Plan. Nor did the Bankruptcy Court make any specific factual findings of such circumstances. Contribution to the estate, substantial or not, on its own (absent exceptional circumstances and importance to the plan) does not warrant plan exculpations.

The Bankruptcy Court abused its discretion denying the Motion for Relief under FRBP 9023 as well as FRBP 9024. All elements, necessary for relief under FRCP 59 were present: clear error of law and fact and a need to correct error or prevent manifest injustice. In such circumstances the Bankruptcy Court should have granted the requested relief. Not only did it err in its legal and factual findings, when denying the Motion for relief, but it also arrived at a decision that could not have been made in the circumstances. Its abuse of discretion was

28

obvious, the Order Denying Relief should be quashed and the Motion for Relief under FRBP 9023 should be granted in the absence of any other relief available to Appellant.

The Bankruptcy Court also abused its discretion, having denied the Motion for Relief under FBRP 9024 and FRCP 60(b)(4) and (6) as in both instances it arrived at a decision that rested on error of law in combination with clearly erroneous factual finding. It completely ignored Appellants arguments that the Bankruptcy Court lacked both subject matter jurisdiction as well as adjudicatory authority to dispose of the SHA Claims through the Exculpations and Injunctions. Its conclusions about Appellants participation in the Bankruptcy Case were clearly erroneous. Accordingly the Order Denying Relief should be quashed and the Motion for Relief under FRBP 9024 and FRCP 60(b)(4) or (6) should be granted.

## ARGUMENT

### THE COURT HAS DISCRETION TO CONSIDER ARGUMENTS NOT PREVIOUSLY RAISED BY APPELLANT

Appellate court has discretion to consider arguments raised for first time on appeal in two instances (*Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir.2005); *In re Murray*, 565 B.R. 527, 532 (S.D.N.Y. 2017)):

(a)   to avoid manifest injustice, or

(b)    where argument presents question of law and there is no need for additional fact-finding.

The Exculpations and Injunctions are manifestly unjust because they dispose of the SHA Claims without Appellant having an opportunity to have these claims heard. They are also manifestly unjust because under the guise of purported adjustment of debtor-creditor(s) relationship (which there was none) the Exculpations and Injunctions adjust relationship between Appellant, on the one hand, and Appellees, VRGP and RHML, on the other.

There is no need for additional fact finding either.  The Bankruptcy Court simply misapplied the law having mistakenly believed it had either subject-matter jurisdiction or adjudicatory power to exculpate and enjoin the SHA Claims and/or that the Exculpation and Injunctions fell within the applicable standard.

In addition, the Bankruptcy Court's lack of jurisdiction to decide on the SHA Claims through approval of the Exculpations and Injunctions in the absence of due process and/or in default of Appellant's presence and/or in the absence of subject-matter jurisdiction mandates the review of its decision by this Court, because where the lower court lacked jurisdiction relief is mandatory (CITE).

For the above reasons, this Court should review Appellant's arguments even though some of these arguments are raised on appeal for the first time.

30

### APPELLANT WAS DENIED DUE PROCESS AS HE WAS NOT PROVIDED WITH A PROPER CONFIRMATION NOTICE

Appellant was not provided with a proper confirmation notice and was deprived of due process as a result. The notice of the confirmation hearing and of the objections to the Plan (649-651 (BDI 113)) (the "Confirmation Notice") was not proper because:

(a)    it was not sent to Appellant's proper address by mail as required by FRBP 3017 and 2002 and

(b)    it did not comply with the required 28-day notice period.

The Bankruptcy Court erred in its conclusion that Appellant was given proper Confirmation Notice (903 (28:4-7)).

FRBP 3017(a), 3017(d) and 2002(b) require giving of a 28 days' notice by mail to an equity security holder of the time fixed for filing objections to the plan and of the hearing to approve the disclosure statement and to confirm the plan. FRBP 3017(d) also provides for mailing of the Chapter 11 plan to all equity security holders.

Notices required to be mailed under Rule 2002 to an equity security holder must be addressed as such entity or an authorized agent has directed in its last request _filed_ in the particular case. FRBP 2002(g)(1). In the Joint Motion for Withdrawal as Attorney of Record Appellant indicated the following address:

31

Sadovnichiskaya Ul, House 74, str 1, #110, Moscow, Russia 115035 (508). Such Joint Motion designating Appellant's address constituted his filed request to have notices mailed to that address for the purpose of Rule 2002(g)(1).

Pursuant to FRBP 3017(d), 2002(b) and 2002(g)(1) the Confirmation Notice and the Plan ware to be mailed (not emailed or couriered) to Appellant at Sadovnichiskaya Ul, House 74, str 1, #110, Moscow, Russia 115035 at least 28 days before the Plan objections deadline and the confirmation hearing. They were not mailed and were not received as a result.

On February 23, 2017 Appellees filed a Revised Confirmation Procedures Order (118-139 (BDI 105)) proposing that the Bankruptcy Court approves the sending of, inter alia, the Confirmation Notice by email to slynch@monte-valle.sg and courier to "*House 74, str 1, #110, Moscow, Russia 115035*". Notably the mailing address lacked the street name.[20]

---

[20] Postcode 115035 covers 18 streets in central Moscow.  The abbreviation str in the Russian address designates the building number, not the street. There is no Str 1 or Street 1 in Moscow. It is relevant to note that both VR Capital and Skadden Arps have had offices in Moscow for decades.

On February 27, 2017 a hearing took place on the Streamline Motion, two days ahead of the date permitted under Local Rule 9006-1(b).[21] Contrary to the fact that Appellant did not participate in the telephonic hearing, as confirmed by CourtCall, the transcript incorrectly lists him and Sandakov (as his counsel) as participants (656 (4:11-19)). During the course of the hearing the Bankruptcy Court also incorrectly believed that Appellant was participating in the hearing and relied on that incorrect information (658 (6:21-23)).

Although FRBP Rule 2002(m) allows the court to enter orders designating the matters in respect to which, the entity to whom, and the form and manner in which notices shall be sent, it contains a caveat "except as otherwise provided by these rules", which does not allow the court to modify requirements of FRBP 3017(d), 2002(b) and 2002(g) by its order. See *Grand Pier Center LLC v. ATC Group Services, Inc.*, 2007 WL 2973829 (N.D.Ill. 2007) at *10.

Accordingly, the FRBP did not permit the Bankruptcy Court to approve the sending of the Confirmation Notice in a manner contrary to FRBP 3017(d), 2002(b) and 2002(g)(1), viz.: by email and courier and not to the address given by

---

[21] Although Appellees moved the Bankruptcy Court to shorten the time period under FRBP 9006(c) (491-502 (BDI 100)), the Bankruptcy Court did not rule on their motion.

Appellant pursuant to FRBP Rule 2002(g)(1). Let alone to an address that does not even exist.[22]

Appellees did not mail the Plan and the Confirmation Notice to Appellant's address as required by FRBP 3017 and 2002. They did not mail the Confirmation Procedures Order (509-512 (BDI 109)) as required by FRCP Rules 5(b) either. As a result of these procedural violations Appellant did not receive the Confirmation Procedures Order, the Plan and the Confirmation Notice at his address and was not notified on the time to file objections to the Plan and of the confirmation hearing. He was thus denied due process.

The FRBP does not provide for service of the Plan and Confirmation Notice under FRCP Rule 4 or permit the Bankruptcy Court to order service of the Plan and the Confirmation Notice under FRCP Rule 4 even where a chapter 11 plan provides for an injunction permitted under substantive law.[23]

The two authorities cited by Appellees and the Bankruptcy Court which provide that service of summons on a person residing in Russia by email is permissible under FRCP Rule 4(f)(3) are simply inapt: while FRCP Rule 4(f)(3)

---

[22] The Bankruptcy Court approved the sending of notices to Appellant to a nonexistent address because the address did not have a street name (510 ¶2).

[23] FRBP 7001(7) exempts chapter 11 plan injunctions (permitted under substantive law) from requirements of an adversary proceeding.

authorizes the court to order service of summons by other means not prohibited by international agreement, FRBP 2002(m) does not permit the court to order an alternative manner for sending notices where other subdivision of this rule (FRBP 2002(b)) provides for a specific method of sending such notices.

The Bankruptcy Court also deprived Appellant of due process by shortening the notice period. Even if, *arguendo*, Appellant was properly sent the Confirmation Notice and Plan, the Bankruptcy Court did not provide Appellant with sufficient time to prepare and file objections to the Plan by shortening the 28 days' notice period by 11 days – Appellant was given only 17 days from the date of the Confirmation Notice to file his objections and even less if one takes into account that three business days would have been required for the documents to reach the Bankruptcy Court from Moscow by an international courier delivery.

A reasonably calculated notice of pendency of the action to apprise interested parties thereof and afford them an opportunity to present their objections is a fundamental requirement of due process of law. *Mullane v. Cent. Hanover Bank & Trust Co.* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). These notice requirements apply to all proceedings involving a disposition of property, including those in bankruptcy. *City of New York v. New York, New Haven, & Hartford Railroad Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953).

Not less than twenty-eight days' notice is required for the filing of objections and the hearing to consider confirmation of a Chapter 11 plan. *In re Sabbun*, 556 B.R. 383, 388 (Bankr. C.D. Ill. 2016). Bankruptcy courts regularly hold that failure to give proper notice of the time to file objections to the disclosure statement and the plan and of the confirmation hearing deprives the relevant person of due process. A creditor who has received no notice of the contents of a plan has been deprived of due process and the terms of that plan cannot be binding on that creditor. Notice of the modified plan is essential to due process for the confirmation order to be binding on the creditors. *In re Welsh*, 540 B.R. 672, 681 (E.D. Ark. 2015) (citation omitted).

The Service Convention also requires the service to be effected in sufficient time to enable the defendant to defend (Article 15). If, *inter alia*, this rule is not observed, a default judgment may not be entered against the defendant.

Given the Russian residency of Appellant and his *pro se* status, the 17 days' Confirmation Notice (which in practical terms was only 14 days due to shipping logistics) instead of the required 28 days, was insufficient to enable Appellant to object to the confirmation of the Plan. In practical terms it was half the time allowed and given the circumstances that in and of itself is a gross injustice. Indeed

it has taken weeks of research by the Appellant to even understand that his rights of Notice were violated and to formulate this appeal on that basis.[24]

A claim cannot be discharged if the claimant is denied due process because of lack of adequate notice. *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145 (2d Cir. 2014). The Bankruptcy Court could not discharge the SHA Claims by the Exculpations and Injunctions because Appellant was denied due process due to the lack of the Confirmation Notice at all or its insufficient term.

Accordingly, the Exculpation and Injunctions in the Confirmation Order should be set aside due to lack of proper Confirmation Notice (either because the Confirmation Notice was not given at all or because it was shorter than required under the FRBP) and lack of due process as a result.

### THE CONFIRMATION ORDER IS VOID WITH RESPECT TO APPELLANT UNDER ARTICLE 15 OF THE SERVICE CONVENTION

If, *arguendo*, the Confirmation Notice and the Plan were to be served on Appellant in accordance with FRCP 4(f) (and not in accordance with FRBP 3017 and 2002), whether or not the Bankruptcy Court could order service by email on

---

[24] The Appellant had previously only articulated to the court his lack of participation to avoid res judicata. It was not the only reason as inter alia there was no proper notice and no due process afforded to Appellant. Also the Appellant expected Judge Drain to act sua sponte and not to exceed jurisdiction and power of the bankruptcy court.

Appellant under FRCP 4(f)(3), the Service Convention did not permit entry of a default judgment on the basis of service by email.

FRCP 4(f)(3) does not authorize a US court to allow service by email, because the Service Convention by permitting (or not interfering with) certain methods of service (see Articles 5, 8, 10, 11 and 19) prohibits all other methods. It will be counterintuitive to interpret the Service Convention otherwise.[25]

Even if the Service Convention did not prohibit service by email, FRCP Rule 4(f)(3) still cannot be used to get around the restrictions in Article 15 of the Service Convention in relation to a default judgment, which may not be entered against the defendant who fails to appear, until it is established that:

(a)    the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or

(b)    the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,

-------

[25] There are a number of authorities, including in the 2nd Circuit, which hold that the Service Convention does not prohibit service by email. However this ignores Article 11 which provides that the Service Convention does not prevent two or more Contracting States from agreeing to permit channels of transmission of judicial documents other than those provided for in the preceding Articles of the Service Convention.

and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Service of documents by email is not provided for under Russian law for the service of documents in domestic actions upon persons who are within its territory (1116). Russian rules of civil procedure require service by registered mail, telegram or signed personal delivery only. The Service Convention does not provide for service of documents by electronic means, e.g. by email. In the circumstances, service by email runs afoul with the Russian civil procedure rules and the Service Convention and the Bankruptcy Court did not have the right to order such service to evade the restrictions of Article 15 of the Service Convention. Nor could the Bankruptcy Court enter a default judgment against Appellant permanently enjoining his SHA Claims.

"Article 15 allows for entry of a default judgment, but only if three conditions are fulfilled: (1) "the document was transmitted by one of the methods provided for in this Convention"; (2) "a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document"; and (3) "no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed." *Zhang v. Baidu.com Inc.* 932 F.Supp.2d 561, 568 (S.D.N.Y 2013).

39

Courts also hold that alternative service will be in full conformity with the Service Convention where the plaintiffs met all three elements required under Article 15. *In re South African Apartheid Litigation* 643 F.Supp.2d 423, 438 (S.D.N.Y. 2009). Until and unless those three elements were met, the Bankruptcy Court did not have the authority to order alternative service under FRCP Rule 4(f)(3).

At the confirmation hearing the Bankruptcy Court failed to establish that all requirements of Article 15 of the Service Convention were satisfied to be able to enter a default judgment against Appellant. If service was improper, the default judgment is void and must be vacated. *Citizens Bank v. Decena*, 562 B.R. 202, 211 (E.D.N.Y. 2016); *United States v. Murphy*, No. 2007 WL 2973584, at *2 (E.D.N.Y. Sept. 28, 2007). Here service was improper for the purpose of a default judgment permitted by Article 15 of the Service Convention. Accordingly, the Exculpation and Injunctions in the Confirmation Order are void vis-à-vis Appellant and must be vacated.

### BANKRUPTCY COURT LACKED SUBJECT-MATTER JURISDICTION OVER THE SHA CLAIMS TO BE ABLE TO ENJOIN THEM

#### *Bankruptcy court's core jurisdiction*

The bankruptcy court has jurisdiction to hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11. 28 U.S.C. § 157(b)(1).

The term "core proceeding" is not statutorily defined. Section 157(b)(2) sets forth a non-exhaustive list of such proceedings." *ICICI Bank Limited v. Essar Global Fund Limited*, 565 B.R. 241, 248 (S.D.N.Y. 2017). Core proceedings are those that are found to be "arising under" the Bankruptcy Code or "arising in" a bankruptcy case. *In re Robert Plan Corp.*, 777 F.3d 594, 596 (2d Cir. 2015). Proceedings "arising under" the Bankruptcy Code are those "that clearly invoke substantive rights created by federal bankruptcy law." *Id* (citation omitted). Proceedings "arising in" a bankruptcy case are those that are not based on any right expressly created by the Bankruptcy Code, but nevertheless, could arise only in a bankruptcy case and would not have any existence outside such case." *Id*, 596-97 (citation omitted); *DeWitt Rehabilitation and Nursing Center, Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 (S.D.N.Y 2012) (citation omitted).

Whether a contract proceeding is core depends on whether the contract is antecedent to the reorganization petition and the degree to which the proceeding is

41

independent of the reorganization. *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999); *Universal Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 97 (2d Cir. 2005).

With respect to timing, claims for pre-petition contract damages are generally non-core. *ICICI Bank,* 565 B.R. at 249 quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993) ("It is clear that to the extent that the claim is for pre-petition contract damages, it is non-core.") and *In re Coudert Bros.*, 2011 WL 7678683, at *5 (S.D.N.Y. Nov. 23, 2011) ("Where a contract sued upon was formed prior to the bankruptcy petition, it will generally be highly unlikely that a proceeding based on that contract turns on the bankruptcy laws.").

The "critical question in determining whether a contractual dispute is core by virtue of timing is not whether the cause of action accrued post-petition, but whether the contract was formed post-petition". A "dispute arising from a pre-petition contract will usually not be rendered core simply because the cause of action could only arise post-petition." *U.S. Lines, Inc.*, 197 F.3d at 637-38.

With respect to independence from the bankruptcy case proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings (for example, claim allowance), or (2) the proceedings directly affect a core bankruptcy function (for example, contractual subordination agreements affecting priority of claims). *ICICI Bank,*

565 B.R. at 249 citing *Universal*, 419 F.3d at 97; *U.S. Lines, Inc.*, 197 F.3d at 637 (citations omitted).

Core bankruptcy functions include fixing the order of priority of creditor claims against a debtor, placing the property of the bankrupt under the control of the court and administering all property in the bankrupt's possession. *U.S. Lines, Inc.*, 197 F.3d at 637 (quotation marks and citations omitted).

### Bankruptcy court's related to jurisdiction

The bankruptcy court has jurisdiction to hear without any determination a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. 28 U.S.C. § 157(c)(1).

The bankruptcy court's non-core jurisdiction is broad (but not limitless), *Celotex Corp. v. Edwards*, 514 U.S. 300, 307–08, 115 S. Ct. 1493, 131 L.Ed.2d 403 (1995), and extends to a proceeding whose outcome may have any "conceivable effect" on the debtor's estate. *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir.1992); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). The standard for "related to" jurisdiction is whether the outcome of the proceeding could conceivably have any effect upon the debtors' estate being administered. *In re Robert Plan Corp.*, 777 F.3d at 597.

Conversely, Bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor. *Celotex Corp.*, 514 U.S. at 308 n.6.

43

The bankruptcy court is a forum where creditors and debtors can settle their disputes with each other, and any internal dispute between a creditor and that creditor's investors belongs elsewhere. *In re Refco Inc.*, 505 F.3d 109, 118 (2d Cir. 2007). Bankruptcy jurisdiction over third-party non-debtor claims is only appropriate where such claims directly affect the res of the bankruptcy estate. *In re Quigley Co., Inc.*, 676 F.3d 45, 53 (2d Cir. 2012). Proceedings "related to" the bankruptcy include suits between third parties which have an effect on the bankruptcy estate. *Celotex Corp.*, 514 U.S. at 308 n.5.

If the action between third parties will have a collateral estoppel effect on the debtor, the third party action is "related to" the bankruptcy case for jurisdictional purposes. *In re Margulies*, 476 B.R. 393, 399 (Bankr. S.D.N.Y 2012) (citation omitted).

A bankruptcy court does not have jurisdiction to resolve a dispute between third parties if it is possible to administer the estate without resolving the dispute, even if its resolution might have a 'chilling effect' on the disposition of the bankruptcy, or might reduce claims against the debtor's estate. *Schumacher v. White*, 429 B.R. 400, 406 (E.D.N.Y. 2010) (quotation marks and citations omitted).

"Related to" jurisdiction must exist independently of any plan provision purporting to involve or enjoin claims against non-debtors. *In re Zale Corp.*, 62 F.3d 746, 756 (5th Cir.1995). 11 U.S.C. §105(a) does not broaden the bankruptcy

44

court's jurisdiction, which must be established separately *In re Johns–Manville Corp.*, 801 F.2d 60, 63 (2d Cir.1986).

A bankruptcy court does not acquire subject matter jurisdiction "to enjoin claims brought against a third-party non-debtor solely on the basis of that third-party's financial contribution to a debtor's estate", as otherwise, "a debtor could create subject matter jurisdiction over any non-debtor third-party by structuring a plan in such a way that it depended upon third-party contributions." *In re Johns-Manville Corp.*, 517 F.3d 52, 66. (2d Cir. 2008) (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 228 (3d Cir.2004)).

More recently the District Court of the District of Delaware held that "the permanent release of a non-debtor, third-party's claim against another non-debtor, third party—whether through a, chapter 11 plan or otherwise—is an exercise of the Bankruptcy Court's "related to" jurisdiction, concluding that a proceeding solely between non-debtor parties based on non-bankruptcy law can only be heard by Bankruptcy Courts under "related to" jurisdiction, and then only "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Millennium Lab Holdings II, LLC,* 2017 WL 1032992 (Del. 2017) at *2 (citation omitted).

45

### *SHA Claims do not fall within core or related to jurisdiction of the Bankruptcy Court*

The SHA Claims, including the claims in the Appellants arbitration request (773-801) ("Arbitration Request"), do not fall within core or related to jurisdiction of the Bankruptcy Court.

First, SHA Claims are against non-debtor parties: Appellees, VRGP and RHML. They are not, nor could possibly be, against the Debtor, because the SHA breaches were committed by Appellants, VRGP and RHML not the Debtor.

Second, the SHA Claims are based on English common law of contract (not on bankruptcy law) and exist outside the bankruptcy case – the SHA Claims relate to Appellees', VRGP and RHML acts that breached the SHA and that could have taken place even without the bankruptcy case. As a matter of the Existing Loans, Appellees could have sought to enforce them and, as a matter of Luxembourg company law, they could have reorganized the share capital of the Debtor. Both of these actions would have violated the SHA, but neither required a bankruptcy filing. The US bankruptcy case was only required so that Appellees and VRGP could obtain Exculpations and Injunctions and block Appellant from pursuing damages claims against them for the SHA breaches.  There were lots of ways Appellees could get rid of Appellant but only one way that also afforded them a

shield from his rightful claims and that way was to fabricate the bankruptcy in the Westchester Division of the US Bankruptcy Court.

Third, it was not possible for Appellant to bring the SHA Claims (against non-debtors for damages for breach of contract) within the bankruptcy case.

For the above reasons the SHA Claims do not arise under title 11: they neither fall within the non-exhaustive list of core proceedings set forth in 28 U.S.C. § 157(b)(2) nor involve rights created by federal bankruptcy law. Moreover, SHA Clause 27.3 expressly excludes any statutory remedies, including those, which arise under bankruptcy law.

The SHA Claims do not arise in a case under Title 11 either. The SHA Claims originate under a pre-petition 2007 SHA. Whether the cause of action accrued either before or after the filing of the petition is irrelevant. *U.S. Lines, Inc.*, 197 F.3d at 637-38.

The SHA Claims are independent of the bankruptcy case – they are neither unique to nor uniquely affected by the bankruptcy proceedings, as would, for example, a claim filed against the Debtor. Nor do the Claims directly affect a core bankruptcy function, as would, for example, a contractual subordination agreement affecting the priority of claims in bankruptcy. *U.S. Lines, Inc.*, 197 F.3d at 637.

Any attempt by the Bankruptcy Court to bring any of the SHA Claims under the category of allowance or disallowance of claims against the estate and

47

characterize them as core proceedings on that basis is legally incorrect. Appellant does not seek to determine whether the Existing Loans should be allowed or disallowed against the Debtor. Appellant is not a party to the Existing Loans and cannot make claims thereunder (1154-1155 (BDI 14) ¶27). The SHA Claims are separate from the Existing Loans.

None of the SHA Claims are related to the Debtor's bankruptcy case because the outcome of these claims will not alter the Debtor's rights, liabilities, options or freedom of action and in no way do they impact upon handling and administration of the bankruptcy estate. The Claims will not have any collateral estoppel effect on the Debtor and the Appellant is not seeking to undo the bankruptcy, he is only seeking damages from the Appellees and other exculpated third parties. Accordingly, related to jurisdiction of the Bankruptcy Court does not exist over the SHA Claims either.

### *If the Bankruptcy Court lacked subject-matter jurisdiction relief from its judgment is mandatory*

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). A judgment remains void even after final judgment if the issuing court lacked subject-matter jurisdiction,

regardless of whether there existed an " arguable basis" for jurisdiction. *Austin v. Smith*, 312 F.2d 337, 343 (D.C.Cir.1962).

If a judgment is void, relief from it is mandatory: "Under [Rule 60(b)(4) ] ..., the only question for the court is whether the judgment is void; if it is, relief from it should be granted...." *Id.* There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4); if the judgment is void, relief is mandatory. *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175 (D.C. Cir. 2013) (citation omitted).

As the Bankruptcy Court lacked subject-matter jurisdiction (and as a result statutory authority) to decide and/or hear the SHA Claims, including claims in Arbitration Request, its decision on the Exculpation and Injunctions against Appellant is void and should be vacated or Appellant should be granted relief under FRBP Rule 9024 and FRCP Rule 60(b)(4), which is mandatory.

## BANKRUPTCY COURT LACKED CONSTITUTIONAL (ADJUDICATIVE) AUTHORITY TO FINALLY DISPOSE OF THE SHA CLAIMS THROUGH THE EXCULPATIONS AND INJUNCTIONS

When a district court refers a case to a bankruptcy judge, that judge's statutory authority depends on whether Congress has classified the matter as a "core proceeding" or a "non-core proceeding". Congress gave bankruptcy courts limited authority in non-core proceedings where absent consent of all the parties to the proceeding bankruptcy courts may only "submit proposed findings of fact and

49

conclusions of law," which the district courts review de novo. §157(c)(1). *Wellness Intern. Network, Ltd. v. Sharif* 135 S.Ct. 1932, 1940, 191 L.Ed.2d 911, 83 USLW 4337 (2015); *Executive Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 2172, 189 L.Ed.2d 83, 82 USLW 4450 (2014).

The limits on the Bankruptcy Court's adjudicatory authority does not end with the related to proceedings, but extends to the so called *Stern* claims – claims designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding there as a constitutional matter.[26] *Executive Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165 at 2170. Adjudication of state-created private rights belongs before an Article III court and must be distinguished from the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power. *Id* at 2171 (citation omitted).

A bankruptcy court lacks constitutional authority to enter final judgment even in a "core" proceeding when (1) the claim does not fall within the public right exception; (2) the claim would not necessarily be resolved in a ruling on a creditor's proof of claim; and (3) parties did not unanimously consent to final

_____

[26] In *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 2601, 180 L.Ed.2d 475 (2011) the Supreme Court ruled that although the bankruptcy judge had the statutory authority to enter judgment on the counterclaim pursuant to 11 U.S.C. 157(b)(2), it lacked the constitutional authority to do so.

adjudication by a non-Article-III tribunal. *ResCap Liquidating Trust v. PHH Mortg. Corp.*, 518 B.R. 259, 265 (S.D.N.Y. 2014) citing *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712, 719–20 (S.D.N.Y.2012).

The Bankruptcy Court's authority to enter a final order on a non-core claim for which the claimant has a constitutional right to adjudication by an Article III court is clearly limited by *Stern* and "following *Stern*, it is clear that regardless of whether the Bankruptcy Court has subject matter jurisdiction over proceedings - both core and non-core - it cannot enter a final order releasing third-party claims unless it has constitutional authority to do so as well." *In re Millennium Lab Holdings II, LLC*, 2017 WL 1032992 (Del. 2017) at *3-4.

In so far as Article III prevents the Bankruptcy Court from entering a final order disposing of a non-bankruptcy claim against a non-debtor outside of the proof of claim process, it follows that this prohibition should be applied regardless of the proceeding (i.e., adversary proceeding, contested matter, plan confirmation). *In re Millennium Lab Holdings II, LLC*, 2017 WL 1032992 (Del. 2017) at *13.

SHA Claims being claims for damages for breach of contract by one non-debtor against other non-debtors could not possibly be resolved "in ruling on creditor's proof of claim" because they are not (nor could be) asserted against the Debtor. Even if, arguendo, the SHA Claims fall within the subject-matter jurisdiction of the Bankruptcy Court and give it statutory authority over them

51

(which Appellant denies), pursuant to *Stern*, *Executive Benefits*, *Wellness* and now *Millennium*, the Bankruptcy Court still lacked constitutional authority to decide the SHA Claims, such claims being English common law Claims, because as a bare minimum such claims had to be decided by this Court, if not by an LCIA tribunal.

Appellant never consented to the determination of the SHA Claims by the Bankruptcy Court. It is counterintuitive to suggest otherwise as Appellant did not even have standing to bring the SHA Claims before the Bankruptcy Court. Moreover, as plainly follows from the Arbitration Request and from submissions made by and on behalf of Appellant in connection with his Motion for Intervention (298-343 (BDI 67)), Appellant has always challenged and continues to challenge the jurisdiction of the Bankruptcy Court to adjudicate his SHA Claims.

In *Millennium*, the district court decided that the plan confirmation issue had to be remanded to the bankruptcy court to consider the issue of its constitutional authority to approve non-debtor third-party releases (strongly suggesting that it did not have such adjudicatory authority). *In re Millennium Lab Holdings II, LLC*, 2017 WL 1032992 (Del. 2017) at *14.

In this case, neither during the hearing (875-921 (BDI 145)), nor in the Confirmation Order did the Bankruptcy Court ever consider whether or not it had constitutional authority over the Exculpations and Injunctions.

Appellant respectfully requests (as Appellant did in the Motion for Relief) that this Court either relieve Appellant from the Exculpations and Injunctions (or strike them from the Plan) or remand the Plan confirmation issue back to the Bankruptcy Court, as in *Millennium*, to consider whether it had constitutional authority to approve the Exculpations and Injunctions (which it does not). If remanded the Bankruptcy Court should allow the Appellant to have his claims heard in the agreed jurisdiction, the LCIA.

Making either of the above decisions will avoid manifest injustice to Appellant, as he has not been afforded any forum to have the SHA Claims heard. Determining that the Bankruptcy Court did not have adjudicatory (constitutional) authority to approve the Exculpations and Injunctions in relation to the SHA Claims, following the decisions in *Stern*, *Wellness* and *Millennium* is a question of law that does not require any additional fact-finding. Either of these grounds allows this Court to exercise its discretion and consider the lack of adjudicative (constitutional) authority argument.

### EXCULPATIONS AND INJUNCTIONS DID NOT SATISFY THE APPLICABLE STANDARD

Subject to constitutional (adjudicative) authority, a permanent release of a non-debtor claim against another non-debtor through a chapter 11 plan is an exercise of the Bankruptcy Court's "related to" jurisdiction, *In re Millennium Lab Holdings II, LLC*, 2017 WL 1032992 (Del. 2017) at *2, which is only appropriate

53

if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). The touchstone for bankruptcy jurisdiction over non-debtor claims against other non-debtors remains whether their outcome might have any conceivable effect on the bankruptcy estate. *In re Quigley Co., Inc.*, 676 F.3d at 57 (citation and quotation marks omitted).

The starting point was therefore to establish a related to jurisdiction of the Bankruptcy Court over the SHA claims, which as evidenced by the hearing transcript (875-921 (BDI 145)) the Bankruptcy Court omitted to do.

Once the related to jurisdiction over a non-debtor – non-debtor release is established, the bankruptcy court must establish specific factual findings of truly unusual or unique circumstances that make the release important to the success of the plan, because a non-debtor release is a device that lends itself to abuse, by which a non-debtor can shield itself from liability to third parties (exactly as occurred in this case). *Metromedia Fiber Network Inc.*, 416 F.3d 136, 143 (2d Cir. 2005).

Courts have approved non-debtor releases when: the estate received substantial consideration; the enjoined claims were channelled to a settlement fund rather than extinguished; the enjoined claims would indirectly impact the debtor's

54

reorganization by way of indemnity or contribution; and the plan otherwise provided for the full payment of the enjoined claims. *Metromedia Fiber Network Inc.*, 416 F.3d at 142. But these are not "factors and prongs". *Id.* A non-debtor release is not justifiable simply on the ground that it was offered in exchange for a monetary contribution. *Id* at 143.

Same standards apply to exculpations. *In re Chemtura Corp.*, 439 B.R. 561, 611 (Bankr. S.D.N.Y. 2010); *In re Genco Shipping & Trading Limited*, 513 B.R. 233, 268-69 (Bankr. S.D.N.Y. 2014).

In approving the Exculpations and Injunctions the Bankruptcy Court made no specific factual findings of truly unusual or unique circumstances that made the Exculpations and Injunctions important to the success of the Plan (… pages 18-19, A … pages 32-33). In fact there were no such circumstances, nor were the Exculpations and Injunctions necessary to the success of the Plan.

Appellees contribution to the Debtor was not conditioned upon the Exculpations and Injunctions. In order to get the anticipated recovery of $140 million Appellees had to continue to fund the litigation over Yukos Finance until its settlement or final adjudication and were prepared to fully fund the $3 million New Money Loan (706-707 ¶¶52, 53). Since Appellant terminated the SHA for its repudiatory breach by Appellees, VRGP and RHML there remained no obstacles to Appellees causing the Debtor and PNS to settle the Yukos Finance litigation and

consequently no obstacles to Appellees funding the Debtor. Accordingly, the Exculpations and Injunctions were not a necessary pre-requisite of Appellees' funding of the Debtor, important to a successful implementation of the Plan.

As there existed no unique or unusual circumstances important to a successful implementation of the Plan, the *Metromedia* standard for the Exculpations and Injunctions was not reached. Absent meeting the *Metromedia* standard, the Bankruptcy Court had no legal ground to approve the Exculpations and Injunction. Accordingly the Exculpations and Injunctions must be stricken from the Plan or Appellant should be relieved from their effect under FRBP 9024 and FRCP 60(b)(6). For the same reason a relief under FRBP 9023 and FRCP 59 is also warranted.

## MOTION FOR RELIEF UNDER FRBP 9023 AND FRCP 59 SHOULD HAVE BEEN GRANTED

To be entitled to re-argument, the moving party must demonstrate that the court overlooked controlling decisions or factual matters that might materially have influenced its earlier decision or, alternatively, the need to correct a clear error or prevent manifest injustice. *In re Adelphia Business Solutions, Inc.* 2002 WL 31557665 (Bankr. S.D.N.Y. 2002) at *1; *In re Coudert Brothers LLP* 2009 WL 2928911 (Bankr. S.D.N.Y. 2009) at *2.

All of the above factors were present in connection with the Motion for Relief and warranted grant of re-argument of the Exculpations and Injunctions.

First, the Bankruptcy Court overlooked a number of controlling decisions referred to above (and for the reasons explained above failed on its own motion to establish that it had (a) subject-matter jurisdiction; (b) constitutional authority; and (c) relevant grounds to approve the Exculpations and injunctions), including but not limited to:

(a) *In re Cuyahoga Equipment Corp.*, 980 F.2d 110 (2d Cir.1992);

(b) *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995);

(c) *In re U.S. Lines, Inc.*, 197 F.3d 631 (2d Cir. 1999);

(d) *Metromedia Fiber Network Inc.*, 416 F.3d 136 (2d Cir. 2005);

(e) *Hertz Corp. v. Friend*, 559 U.S. 77 (2010);

(f) *Stern v. Marshall* 564 U.S. 462 (2011);

(g) *In re Quigley Co., Inc.*, 676 F.3d 45 (2d Cir. 2012);

(h) *Wellness Intern. Network, Ltd. v. Sharif* 135 S.Ct. 1932 (2015).

The Bankruptcy Court overlooked the factual matters pertaining to the SHA Claims: these claims were not against the Debtor, they did not have any conceivable effect on the estate, there were no unique circumstances for enjoining these claims for the purpose of the Plan implementation.

The Bankruptcy Court was aware of the March 6, 2017 Arbitration Request, which left no doubt that Appellant who from day one and every day disputed the jurisdiction of the Bankruptcy Court had never consented to the adjudication of the SHA Claims by the Bankruptcy Court.

Given the nature of the SHA Claims, the Bankruptcy Court's conclusions that it had subject matter jurisdiction, adjudicatory authority and that the grounds to approve the Exculpations and Injunctions existed were clearly erroneous.

There was also a need to prevent the manifest injustice of disposal of the SHA Claims by the Bankruptcy Court when these claims being claims between non-debtor parties and not affecting the res of the estate were not nor could have been submitted to it for determination.

While only one element is necessary for a bankruptcy court to exercise its discretion and grant a motion for new trial, in this case all four alternative elements were present. In such circumstances the Bankruptcy Court should have granted the Motion for Relief under FRBP 9023 and FRCP 59.

At a minimum the Order Denying Relief in the circumstances where all four alternative elements were present cannot be located within the range of permissible decisions and should be quashed for abuse of discretion and the Motion For Relief granted.

The Bankruptcy Court also erred in law and factual findings when it denied the Motion for Relief:

(a)     As stated above, Appellant satisfied requirements for relief under Rule 9023 contrary to the Bankruptcy Court's finding (1048 (45:14-16));

(b)     The Bankruptcy Court was to consider its jurisdiction, constitutional authority and exceptional circumstances as grounds for the Exculpations and Injunctions and not their "implications" (1049 (46:21-24)). Under no circumstances were it to approve the Exculpations and Injunctions "routinely". *In re Chemtura Corp.*, 439 B.R. at 611; *In re Genco Shipping & Trading Limited*, 513 B.R. at 268.

Having erred in law and factual findings while denying the Motion for Relief the Bankruptcy Court abused its discretion. Accordingly, the Order Denying Relief should be quashed and the Motion for Relief granted.

### MOTION FOR RELIEF UNDER FRBP 9024 AND FRCP 60(B) SHOULD HAVE BEEN GRANTED

The court may relieve a party from a final order if the judgment is void. FRBP 60(b)(4). A party may seek relief from a final judgment that "is void," in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the

opportunity to be heard. *United Student Aid Funds, Inc. v. Espinosa* 130 S.Ct. 1367.

For the reasons set out in section "Bankruptcy Court lacked subject-matter jurisdiction over the SHA Claims to be able to enjoin them" the Bankruptcy Court did not have subject-matter jurisdiction over the SHA Claims and accordingly could not dispose of these claims through Exculpations and Injunctions. On this ground the Confirmation Order is void.

Judgments that are void must be set aside under Rule 60(b)(4). Orix Financial Services v. Phipps, 2009 WL 2486012 (S.D.N.Y. 2009) citing *Cent. Vt. PSC v. Herbert*, 341 F.3d 186, 189 (2d Cir.2003) (holding that under Rule 60(b)(4) "a deferential standard of review is not appropriate because if the underlying judgment is void, it is per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)").

Even if, *arguendo*, the Confirmation Order is not void, relief from the Exculpations and Injunctions was still warranted under FRCP 60(b)(6) because the Bankruptcy Court lacked adjudicatory authority over the SHA Claims. The underlying scope of FRCP 60(b)(6) is to do justice in a particular case when the judgment may work an extreme and undue hardship and when relief is not warranted by the preceding clauses of Rule 60(b). *In re AMC Realty Corp.*, 270 B.R. 132, 143-44 (Bankr. S.D.N.Y. 2001); *In re Teligent, Inc.*, 326 B.R. 227.

In determining whether a movant has met its burden under Rule 60(b)(6), relevant considerations include:

> (a)    the desire to resolve disputes on their merits;
>
> (b)    the existence of a meritorious claim or defense; and
>
> (c)    the absence of unfair prejudice to the opposing party if the

requested relief is granted. *Id* (citation omitted).

Relief under FRCP 60(b)(6) was justified because the Exculpations and Injunctions placed undue hardship on Appellant by depriving him of any ability to vindicate his rights against Appellees and other exculpated parties. As a consequence of this and given the incredibly limited universe of people affected by this bankruptcy—there is only one person affected, the Appellant, the Appellant should have the right to seek damages from the liable parties.

In denying the Motion for Relief under, inter alia, FRCP 60(b)(6), the Bankruptcy Court abused its discretion by failing to address at all the lack of adjudicatory authority of the Bankruptcy Court over the SHA Claims – there is nothing in the decision of the Bankruptcy Court about its subject-matter jurisdiction, statutory or adjudicatory authority over the SHA Claims (1038-1057). Instead, it erroneously held that Appellant impliedly agreed to adjudication of its SHA Claims by the Bankruptcy Court by choosing to participate in the bankruptcy proceedings (1046 (43:11-20)) referring to *Wellness Intern. Network, Ltd. v. Sharif*

61

135 S.Ct. 1948. This Bankruptcy Court's conclusion was legally and factually wrong. First, Appellant never sough adjudication of his SHA Claims by the Bankruptcy Court. The record clearly supports that. Appellant sought stay of the bankruptcy case pending resolution of his SHA Claims by an LCIA tribunal or, alternatively, dismissal of or abstention from the bankruptcy case, but not adjudication of the SHA Claims by the Bankruptcy Court on the merits. He simply could not because the Bankruptcy Court did not have jurisdiction to even hear the SHA Claims. Second, even an implied consent has to be knowing and voluntary in that "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case" before the non-Article III adjudicator. *Id.* This never happened because the SHA Claims were never before the Bankruptcy Court, and Appellant was never made aware that he had the right to have the Exculpations and Injunctions to be decided by an Article III adjudicator. For the above reasons the Order Denying Relief from the Exculpation and Injunction provisions under FRCP 60(b)(6) because the Bankruptcy Court lacked, inter alia, adjudicatory (constitutional) authority to approve the Exculpations and Injunctions should be quashed and the Motion for Relief granted.

## CONCLUSION

For the reasons set out about Appellant respectfully requests this Court to grant its appeal in its entirety as follows:

62

(a)     to declare that the Exculpations and Injunctions are void vis-à-vis Appellant; and/or

(b)     to order that the Exculpations and Injunctions be stricken out from the Confirmation Order and the Plan; and/or

(c)     to grant Appellant relief from the Exculpations and Injunctions under FRCP 60(b)(4) or FRCP 60(b)(6) and FRBP 9024; and/or

(d)     to quash the Order Denying Relief under FRBP 9024 and FRCP 60(b)(4) or FRCP 60(b)(6); or

(e)     to quash the Order Denying Relief under FRBP 9023 and FRCP 59.


Dated:      July 13, 2017
London, United Kingdom

                              Respectfully Submitted,

                              Stephen P. Lynch

                              Stephen P. Lynch
                              *Pro Se*
                              Ul. Letnikovskaya #2, Str 3,
                              P.O. Box #9, Moscow, 115114,
                              Russia

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 8015(a)(7)(C) of the Federal Rules of Bankruptcy Procedure I hereby certify that:

1.     The brief complies with Rule 8015(a)(7)(B) of the Federal Rules of Bankruptcy Procedure, made applicable by Rule 8015(f), because it contains in total 13,841 words, as determined by the word-count function of Microsoft Word.

2.     This brief complies with the typeface requirements of Rule 8015(a)(15) of the Federal Rules of Bankruptcy Procedure because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: July 13, 2017

Stephen P. Lynch
Pro se
London, United Kingdom