Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Existing Interests. A Claim or Existing Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Existing Interest has not been paid, released, withdrawn or otherwise settled before the Effective Date. The categories of Claims and Existing Interests set forth below classify all Claims against and Existing Interests in the Debtor for all purposes of this Plan. A Claim or Existing Interest shall be deemed classified in a particular Class only to the extent the Claim or Existing Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Existing Interest qualifies within the description of such different Class. The treatment with respect to each Class of Claims and Existing Interests provided for in this <u>Article III</u> shall be in full and complete satisfaction, release and discharge of such Claims and Existing Interests.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Existing Loan Claims | Impaired | Yes (~~deemed~~will vote to accept) |
| Class 3 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class 4 | Existing Interests | Impaired | Yes ~~(deemed to accept)~~ |

B.   *Treatment of Claims and Interests*

1.   **Class 1 – Priority Non-Tax Claims.**

1.   <u>Impairment and Voting</u>.  Class 1 is Unimpaired by the Plan.  Each holder of an Allowed Priority Non-Tax Claim shall be conclusively deemed to have accepted the Plan. The Plan Proponents do not believe there are any Allowed Priority Non-Tax Claims.

2.   <u>Distribution</u>.  On the Effective Date, or as soon as reasonably practicable thereafter, unless the holder of a Priority Non-Tax Claim and the Plan Proponents agree to different treatment, each holder of an Allowed Priority Non-Tax Claim shall have its Claim Reinstated or paid in full in cash.

2.   **Class 2 – Existing Loan Claims.**

1.   <u>Impairment and Voting</u>.  Class 2 is Impaired by the Plan.  Lapidem and Mascini ~~are~~support the Plan and will be deemed to accept the Plan on account of their Existing Loans without the need for formally casting a ballot in favor of the Plan.  Lapidem's Existing Loan Claims are Allowed Claims in the total amount of no less than (i) $112,023,399 million and

17

(ii) €16,596,240. Mascini's Existing Loan Claims are Allowed Claims in the amount of no less than (i) $168,031,600 million and (ii) €24,894,360.

2. ~~Distribution~~Distributions. On the Effective Date, or as soon as reasonably practicable thereafter, each of Lapidem and Mascini shall receive in satisfaction of all Allowed Existing Loan Claims, upon their joint election exercised in their sole discretion, each of their pro rata shares of and interests in either: (i) if there is a Transaction acceptable to Lapidem and Mascini in their sole discretion, the Transaction Proceeds after payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed General Unsecured Claims until the Allowed Existing Loan Claims are paid in full; or (ii) if there is no Transaction acceptable to Lapidem and Mascini in their sole discretion, the Modified Loans plus all New Class A-1 Shares, *provided however*, that if the Plan Support Conditions are satisfied, Mr. Lynch shall receive the New Class A-2 Share.

3. **Class 3 – General Unsecured Claims.**

1. Impairment and Voting. Class 3 is Unimpaired by the Plan. Each holder of an Allowed General Unsecured Claim shall be conclusively deemed to have accepted the Plan. ~~The Plan Proponents estimate that General Unsecured Claims total approximately $300,000.~~

2. Distributions. On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that the holder of a General Unsecured Claim and the Plan Proponents agree to a different treatment, each holder of an Allowed General Unsecured Claim shall be paid in full either from the Transaction Proceeds or proceeds from the New Money Loan.

4. **Class 4 – Existing Interests.**

1. Impairment and Voting. Class 4 is Impaired by the Plan. Lapidem and Mascini ~~are~~support the Plan and will be deemed to accept the Plan on account of their Existing Interests. ~~Accordingly, Class 4 is deemed to accept~~ without the need for formally casting a ballot in favor of the Plan. Stephen Lynch is allowed to cast a vote accepting or rejecting the Plan on account of his Existing Interest.

2. Distributions.

i. In the event Lapidem and Mascini elect to consummate a Transaction, holders of Existing Interests shall receive all Transaction Proceeds remaining, if any, after payment in full of all Allowed Administrative Claims, Allowed Priority Non-Tax Claims, Allowed Priority Tax Claims, Allowed General Unsecured Claims, and Allowed Existing Loan Claims. Lapidem and Mascini shall receive, on account of their Existing Interests, their pro rata share of 90% of such remaining Transaction Proceeds based on their pro rata shares of Existing Loans as of the Effective Date, and Stephen Lynch shall receive, on account of his Existing Interests, 10% of such

18

remaining Transaction Proceeds, with such distributions to Lapidem, Mascini and Stephen Lynch adjusted to reflect the Lynch Net Gain Sale Agreement.

  ii.  In the event Lapidem and Mascini elect not to consummate a Transaction and elect instead to receive the Modified Loans and the New Class A-1 Shares in satisfaction of their Allowed Existing Loan Claims, then no holder of Existing Interests shall receive or retain any property on account of such Existing Interests under the Plan, and all such Existing Interests shall be cancelled, and of no further force or effect, *provided however*, that if the Plan Support Conditions are satisfied, Mr. Lynch shall receive the New Class A-2 Share.

### C. *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan will affect the Plan Proponents' or the Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims, including the right to Cure any arrearages or defaults that may exist with respect to contracts to be assumed under the Plan.

### D. *Special Provision Governing Executory Contracts*

Any Allowed Claims arising from the rejection of the Debtor's Executory Contracts, including termination or rejection of the SHA, shall share *pari passu* in any distributions made under Article III.B.2 of the Plan other than the New Class A-1 Shares. The Plan Proponents do not believe there are any such Claims. All such Claims are Disputed Claims. The Plan Proponents reserve the right to assert that any such Claims asserted with respect to the SHA shall be subordinated pursuant to Section 510(b) of the Bankruptcy Code.

### DE. *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

The Plan Proponents shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Classes of Claims and Existing Interests. The Plan Proponents reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A. *Transaction Process*

In an effort to explore all reasonable alternatives for maximizing the value of the Debtor's Estate, the Plan Proponents shall pursue the Transaction Process in order to identify one or more Transactions, if any, for the direct or indirect disposition of the Debtor's assets, including possible resolution of the Yukos Finance Litigation or sale of the participation

19

interests in PNS. On or before the Plan Supplement Date, the Plan Proponents or their designees shall file a statement with the Bankruptcy Court, which may include one or more affidavits, summarizing actions taken in connection with the Transaction Process. If any such Transactions are identified, developed and negotiated to Lapidem's and Mascini's satisfaction, as determined by them in their sole discretion, they shall also file with the Bankruptcy Court on the Plan Supplement Date any Purchase Agreement or other documentation evidencing such Transactions. Lapidem and Mascini will seek approval of any such proposed Transactions at the Confirmation Hearing, with such Transactions to be implemented under the Plan. If Lapidem and Mascini choose not to pursue any Transaction, as determined by them in their sole discretion, then they shall elect to receive the Modified Loans, and shall so state in the statement they file with the Bankruptcy Court on the Plan Supplement Date. The Plan Proponents will offer to provide periodic updates to Stephen Lynch and his counsel on the Transaction Process, and will solicit their input as the Transaction Process progresses.

### B. *Implementation of Transactions*

In the event the Bankruptcy Court approves one or more Transactions that contemplates a sale of the Debtor's ownership interests in the participation interests in PNS, the Confirmation Order shall direct each manager of the Debtor to pass a resolution by the Effective Date authorizing and directing the Debtor to (A) enter into a power of attorney (the "Power of Attorney") delegating powers to enter into a Purchase Agreement on behalf of the Debtor to a person nominated by the board of managers and enter into such other documents as may be legally required to evidence such transfer; (B) enter into the Purchase Agreement, as transferor, with the purchaser thereunder, as transferee, evidencing the transfer and vesting of the purchased assets in the purchaser; and (C)(X) execute the Purchase Agreement before a notary public in the Russian Federation and (Y) submit the Purchase Agreement, the Power of Attorney and such other papers as may be necessary before a notary public in the Russian Federation in connection with the submission of any necessary papers (by the notary public or otherwise) to the competent Russian tax or other authorities and the making of any necessary entry in the Unified State Register of Legal Entities in accordance with Article 21 of the Russian Federal Law No. 14-FZ on Limited Liability Companies, dated 8 February 1998 (as amended) (the "Russian LLC Law"). To the extent Stephen Lynch is the general director of PNS at the time when ~~the~~any transfer of the participation interests in PNS is effected pursuant to ~~the~~any Purchase Agreement, he shall amend or shall procure the amendment by PNS' responsible officer of, the list of PNS' participants maintained by PNS in accordance with Article 31.1 of the Russian LLC Law to reflect the purchaser under the Purchase Agreement as the owner of the participation interests in PNS.

### C. *Cancellation Of Existing Shares; Issuance Of New Shares*

Except as otherwise specifically provided for in the Plan, on the Effective Date, all instruments, certificates, agreements and documents evidencing the Existing Interests in the Debtor shall be cancelled, and the obligations of the Debtor thereunder and in any way related thereto shall be fully satisfied, released and discharged. On the Effective Date or as soon thereafter as practicable, the Reorganized Debtor shall issue or cause to be issued (i) the New

20

Class A-1 Shares to the Plan Proponents, (ii) if the Plan Support Conditions are satisfied, the New Class A-2 Share to Stephen Lynch, and (iii) the New Class B-1 Shares to the New Money Participants. All such New Class A-1 Shares, the New Class A-2 Share, and the New Class B-1 Shares shall be duly authorized, validly issued, fully paid and non-assessable. The Amended Kirwan Governance Documents will provide for the issuance of the New Class A-1 Shares, the New Class A-2 Share if the Plan Support Obligations are satisfied, and the New Class B-1 Shares, with all of such Shares to have the same voting rights.

C D.    *Post-Effective Date Governance*

1.    *Governance of the Reorganized Debtor*

The SHA shall be deemed terminated no later than the Effective Date by operation of §§ 1.9, 1.11 and 23.1 thereof and/or rejected pursuant to Article V of the Plan in the Plan Proponents' sole discretion. Governance of the Reorganized Debtor shall be as provided for in the Amended Kirwan Governance Documents. Such Documents will provide for a board of managers comprised of between three and five members, all of whom shall be selected by the Plan Proponents in their sole discretion, with the number of such members also determined by the Plan Proponents in their sole discretion, with such board members vested with exclusive authority to make all decisions on the Reorganized Debtor's behalf, except as otherwise directed by Lapidem and Mascini. The names of the initial members of the board of managers of Reorganized Kirwan shall be included in the Plan Supplement. Stephen Lynch shall be entitled to serve as board observer so long as the Plan Support Conditions are satisfied. The Amended Kirwan Governance Documents shall otherwise comply with Luxembourg and any other applicable law. All persons who serve as managers of the Debtor as of the Effective Date shall be deemed to resign as of such date. All such persons are directed to deliver such forms of resignation and any other related documents as may be necessary to evidence such resignation under Luxembourg law and any other applicable law. All managers of the Debtor and holders of Existing Interests are authorized and directed to execute such documents as are necessary under Luxembourg law, including the Board and Shareholder Circulars, to approve the Amended Kirwan Governance Documents and issuance of the New Class A-1 Shares, the New Class A-2 Share and New Class B-1 Shares.

2.    *Governance of PNS*

The Confirmation Order shall direct (i) the board of managers of the Debtor and the Reorganized Debtor or, alternatively, (ii) if a Transaction is approved resulting in a third-party's acquisition of the participation interests in PNS, such third-party, (A) to pass such resolutions and to cause any such changes to PNS's governing documents in each case as are necessary in order to vest sole and exclusive control of PNS in the Reorganized Debtor or such third-party, as appropriate; (B) to cause the removal of Stephen Lynch as PNS's general director and appointment of such other person as PNS's general director as the Reorganized

21

Debtor or such third-party acquirer determines in its sole discretion, including such actions as may be necessary for the submission of any necessary papers to comply with the Russian LLC Law and other applicable law in the Russian Federation; and (C) to cause PNS to replace Stephen Lynch as provisional director of Yukos Finance.  The Confirmation Order shall further direct Stephen Lynch to facilitate control of PNS by undertaking the PNS Transition Matters.

DE.        *New Money Loan; Post-Effective Date Loans*

The Debtor shall implement the New Money Loan Offering by offering to sell New Money Loan Participations and New Class B-1 Shares to the New Money Loan Participants. The deadline for New Money Loan Participants to subscribe to New Money Loan Participations shall be ~~two days before~~ the Plan Supplement Date, *provided however*, that the Plan Proponents may determine in their sole discretion not to consummate the New Money Loan Offering.  After the Effective Date, the Plan Proponents shall have the exclusive right in their sole discretion to make Post-Effective Date Loans to the Reorganized Debtor without approval of the Bankruptcy Court.

22

*E.F.* *Plan Support Conditions*

As a condition to Mr. Lynch (1) participating in the New Money Loan Offering and any future distributions contemplated by Article III.B.4 of the Plan; (2) participating in the governance of the Reorganized Debtor as contemplated by Article IV.C.1; and (3) receiving a release by the Plan Proponents and the Reorganized Debtor of the Lynch Causes of Action, Stephen Lynch (i) must not object, directly or indirectly, to the Plan or take any actions inconsistent with, or that would delay approval or confirmation of, the Plan or any Transaction; (ii) must not, directly or indirectly, seek or support or encourage or join with any other Person or entity in seeking to challenge, to disallow, subordinate or limit, in any respect, as applicable, the enforceability, priority, amount or validity of the Existing Loans; (iii) must not, directly or indirectly, propose, support, seek, solicit, participate in or encourage any negotiations regarding any other plan of reorganization, scheme of arrangement, sale, proposal, dissolution, consolidation, joint venture, winding up, liquidation, reorganization, merger, amalgamation or restructuring of the Debtor or PNS or the disposition of the Yukos Finance Litigation, whether directly or indirectly; (iv) must use commercially reasonable efforts to promptly notify the Plan Proponents upon the receipt of any written solicitation or proposal relating to any other plan, scheme of arrangement, sale, proposal, dissolution, consolidation, joint venture, winding up, liquidation, reorganization, merger, amalgamation or restructuring of the Debtor or PNS or the disposition of the Yukos Finance Litigation; (v) must use commercially reasonable efforts in exercising any powers or rights available to him in favor of any matter requiring approval of the Plan, including by filing pleadings in respect thereof in any court or tribunal and before any Governmental Authority; (vi) must not file any Proof of Claim or assert any Claim of any kind against another Person, and (vii) must provide the Lynch Release, which shall grant full and unconditional releases to all parties to the SHA in a form acceptable to the Plan Proponents, for any and all Claims arising out of or in connection with the SHA or otherwise arising out of or in connection with his Existing Interests in the Debtor.

*F.G.* *Restructuring Transactions*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Persons may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Persons agree; (3) the filing of appropriate certificates or articles of incorporation or amendments thereof, reincorporation, merger, consolidation, conversion or dissolution pursuant to

23

applicable law; and (4) all other actions that the applicable Persons determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

## ~~G~~H.     Corporate Action

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including all actions contemplated by the Plan, whether to occur before, on or after the Effective Date.  All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the shareholders or managers of the Debtor or the Reorganized Debtor.  On or (as applicable) before the Effective Date, the appropriate managers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, certificates of incorporation, operating agreements and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor.  The authorizations and approvals contemplated by this Article IV shall be effective notwithstanding any requirements under non-bankruptcy law.

## ~~H~~I.  Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtor and the officers and members of the board of managers thereof are authorized to issue, execute, deliver, file or record such contracts, securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization or consents except for those expressly required pursuant to the Plan.

## ~~I~~J.  Securities Exemption

The New Class A-1 Shares and the New Class A-2 Share will be exempt from registration pursuant to section 1145 of the Bankruptcy Code.  The New Class B-1 Shares will be exempt from registration pursuant to section 1145 of the Bankruptcy Code to the extent permitted or under the Securities Act by virtue of Section 4(a)(2) thereof and Regulation D promulgated thereunder or other applicable non-bankruptcy law. ~~Section 1146~~

## K.  Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property in contemplation of, in connection with, or pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for

24

filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by Article IV hereof; and (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; or (d) assignments executed in connection with any transaction occurring under the Plan.

## H.L. *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released, including the Lynch Causes of Action if the Plan Support Obligations are satisfied, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, including the Lynch Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. No Person may rely on the absence of a specific reference in the Plan to any Cause of Action against them as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Debtor or Reorganized Debtor have released any Person on or before the Effective Date (including pursuant to the releases by the Debtor or otherwise), the Debtor or Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after or as a consequence of the Confirmation or consummation of the Plan.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS

### A. *Disposition of Executory Contracts*

The Confirmation Order shall provide that the SHA shall be deemed terminated no later than the Effective Date by operation of §§ 1.9, 1.11 and 23.1 thereof. In the absence of any such determination, in the Plan Proponents' discretion, the SHA and every other Executory Contract, except for any engagement letter or fee agreement with any professional,

25

shall be deemed rejected as of the Effective Date. All engagement letters and fee agreements shall be assumed except as otherwise provided in connection with any Transaction. The Plan Proponents do not believe the Debtor is party to any Executory Contract other than the SHA and engagement letters and fee agreements with professionals. Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions or rejections of such Executory Contracts, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, all assumptions or rejections of Executory Contracts pursuant to the Plan are effective as of the Effective Date.

All assumed Executory Contracts shall remain in full force and effect for the benefit of the Reorganized Debtor, and be enforceable by the Reorganized Debtor in accordance with their terms, notwithstanding any provision in such assumed Executory Contract that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in the assumed Executory Contracts that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases is hereby deemed unenforceable. To the extent any provision in any Executory Contract assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtor's assumption of such Executory Contract, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or to exercise any other default-related rights with respect thereto. Each Executory Contract assumed pursuant to the Plan or by Bankruptcy Court order shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by such order or by applicable law. Notwithstanding anything to the contrary in the Plan, the Plan Proponents, the Debtor or the Reorganized Debtor, as applicable, reserve the right to alter, amend, modify or supplement any list of Executory Contracts at any time before the Effective Date. After the Effective Date, the Reorganized Debtor shall have the right to terminate, amend or modify any contracts, leases or other agreements without approval of the Bankruptcy Court.

## B. *Claims Based on Rejection of Executory Contracts*

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts, including termination or rejection of the SHA, if any, must be filed with the Bankruptcy Court by the applicable claims bar date. Any such Claims arising from the rejection of an Executory Contract not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtor or the Reorganized Debtor, the Estate or their property without the need for any objection by the Reorganized Debtor or further notice to, or action, order or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtor's Executory Contracts shall be classified as General Unsecured Claims against the Debtor and shall be, including termination or rejection of the SHA, shall be treated in accordance with Article III.D of the Plan unless otherwise ordered by the Bankruptcy Court.

26

## C. *Cure of Defaults for Assumed Executory Contracts*

Any monetary amounts by which any Executory Contract to be assumed under the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by Cure. If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract to be assumed or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption. Assumption of any Executory Contract pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults, arising under any assumed Executory Contract at any time before the effective date of the assumption.

## D. *Reservation of Rights.*

Nothing contained in the Plan shall constitute an admission by the Plan Proponents or the Debtor that any particular contract is in fact an Executory Contract or that the Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract is or was executory at the time of assumption or rejection, the Plan Proponents or Reorganized Debtor shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## E. *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts assumed by the Debtor, will be performed by the Debtor or Reorganized Debtor in the ordinary course of its business. Accordingly, such contracts and leases will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

## A. *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed Claim or Existing Interest against the Debtor shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Allowed Existing Interests in the applicable Class and in the manner provided herein. There shall be no record date for distributions under the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed

27

as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided herein, holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.  *Disbursing Agent*

Except as otherwise provided herein, all distributions under the Plan shall be made by the Reorganized Debtor as Disbursing Agent or such other Person designated by the Reorganized Debtor as a Disbursing Agent on the Effective Date.

C.  *Rights and Powers of Disbursing Agent*

1.  Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) affect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.  Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent in connection with distributions under or implementation of the Plan on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor.

D.  *Cash Distributions*

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Reorganized Debtor, except that Cash payments made to foreign creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

E.  *Rounding of Payments*

Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole dollar, or zero if the amount is less than one dollar.

28

F.  *Distributions on Account of Claims Allowed After the Effective Date*

1.  Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.  Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtor or the Reorganized Debtor, on the one hand, and the holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

G.  *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.  Delivery of Distributions in General

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be made to holders of record by the Disbursing Agent: (a) to the signatory set forth on any of the Proofs of Claim filed by such holder or other representative identified therein (or at the last known addresses of such holder if no Proof of Claim is filed or if the Debtor has been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; (c) on any counsel that has appeared in the Chapter 11 Case or any successor cases on the holder's behalf; or (d) at the addresses reflected in the Debtor's books and records. Distributions under the Plan on account of Allowed Claims or Allowed Existing Interests shall not be subject to levy, garnishment, attachment or like legal process, so that each holder of an Allowed Claim or Allowed Existing Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan.  None of the Debtor, the Reorganized Debtor and the applicable Disbursing Agent shall incur any liability whatsoever on account of any distributions under the Plan except for gross negligence, willful misconduct or fraud.

2.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made as soon as practicable after such distribution has become deliverable or has been claimed to such holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of six months from the applicable distribution date. After such date, all "unclaimed property" or interests in property shall revert to the Reorganized Debtor (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any holder to such property shall be discharged and forever barred.

*H.   Withholding and Reporting Requirements*

In connection with the Plan and all instruments issued in connection therewith, the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

*I.    Setoffs*

Except as set forth herein, the Debtor and the Reorganized Debtor may withhold (but not set off except as set forth below) from the distributions called for under the Plan on account of any Allowed Claim or Allowed Existing Interest an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the holder of any such Allowed Claim or Allowed Existing Interest. In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the holder of any such Allowed Claim or Allowed Existing Interest are adjudicated by Final Order or otherwise resolved, the Debtor may, pursuant to section 558 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim or Allowed Existing Interest and the distributions to be made pursuant hereto on account of such Allowed Claim or Allowed Existing Interest (before any distribution is made on account of such Allowed Claim or Allowed Existing Interest) the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Debtor or the Reorganized Debtor may hold against the holder of any such Allowed Claim or Allowed Existing Interest, but only to the extent of such adjudicated or resolved amount. Neither the failure to effect such a setoff nor the allowance of any Claim or Allowed Existing Interest under the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, equity interests, rights and Causes of Action that the Debtor or the Reorganized Debtor may possess against any such holder, except as specifically provided herein.

*J.    Allocation of Distributions Between Principal and Unpaid Interest*

To the extent that any Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for income tax purposes, be allocated on the Debtor's books and records to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the accrued but unpaid interest.

## ARTICLE VII

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

*A.    Proofs of Claim*

Notwithstanding anything herein, in the Bankruptcy Code, in the Bankruptcy Rules, or in any other order of the Bankruptcy Court to the contrary, the Plan Proponents will not be required to file Proofs of Claim in the Chapter 11 Case or any successor cases on account of the Existing Loan Claims and their Existing Interests, and the findings of fact in the Confirmation Order shall be deemed to constitute a timely filed Proof of Claim.

*B.    Prosecution of Objections to Claims*

The Plan Proponents (before the Effective Date) and the Reorganized Debtor (on or after the Effective Date), as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under the Plan.  From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Plan Proponents and the Reorganized Debtor reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.  The Plan Proponents dispute any Proof of Claim filed, or other Claim asserted, by Stephen Lynch, and such Proof of Claim or Claim is a Disputed Claim.

*C.    Allowance of Claims*

Except as expressly provided herein or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), the Reorganized Debtor after the Effective Date will have and retain any and all rights and defenses held by the Debtor with respect to any Claim as of the Petition Date.  All claims of any Person against any Debtor shall be disallowed unless and until such Person pays, in full, the amount it owes the Debtor.

*D.    Distributions After Allowance*

On the Distribution Date following the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent

shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim.

### E. Estimation of Claims

The Plan Proponents (before the Effective Date) and the Reorganized Debtor (on or after the Effective Date) may, at any time, and from time to time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any party or Person, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Plan Proponents (before the Effective Date) and the Reorganized Debtor (after the Effective Date), may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. All of the objection, estimation, settlement and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### F. Deadline to File Objections to Claims

Any objections to Claims shall be filed no later than the Claims Objection Bar Date; provided, however, that the Plan Proponents or the Reorganized Debtor's failure to file an objection by the Claims Objection Bar Date shall not cause any Claim to be deemed an Allowed Claim nor shall it prejudice their rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

## ARTICLE VIII

## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

### A. Compromise and Settlement of Claims, Interests and Controversies

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Existing Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim or Existing Interest may have with respect to any Allowed Claim or Existing Interest, or any distribution to be made on account of such Allowed Claim or Existing Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's

32

approval of the compromise or settlement of all such Claims, Existing Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate and holders of Claims and Existing Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims and Causes of Action against other Persons.

### B. *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated therein, and except with respect to any assets of the Debtor acquired in a Transaction as evidenced by a Purchase Agreement or otherwise, on the Effective Date, all property of the Estate and all Causes of Action (except those released pursuant to the Plan) shall vest in the Reorganized Debtor, free and clear of all liens, Claims, charges or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its businesses and may use, acquire or dispose of property and compromise or settle any Claims, Existing Interests, and Causes of Action, including by causing PNS to compromise or settle the Yukos Finance Litigation to the extent PNS is not sold in a Transaction, in each case without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code, Bankruptcy Rules, or any prepetition agreement, including the SHA.

### C. *Discharge of Claims*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release and discharge, effective as of the Effective Date, of all Claims, Existing Interests and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Existing Interests from and after the Petition Date, whether known or unknown, against the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Existing Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Existing Interest based upon such Claim, debt, right or Existing Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Existing Interest based upon such Claim, debt, right or Existing Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Existing Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtor with respect to any Claim or Existing Interest that existed before or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of

all Claims and Existing Interests subject to the Effective Date occurring, except as otherwise expressly provided in the Plan.

### D. Releases by the Debtor

Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent allowed by applicable law, and except as otherwise specifically provided in the Plan or the Plan Supplement, for good and valuable consideration, including (i) the service of the Released Parties in facilitating the expeditious reorganization of the Debtor and the implementation of the restructuring contemplated by the Plan, (ii) the New Money Loan Participants' participation in the New Money Loan Offering, and (iii) the discharge of debt and all other good and valuable consideration paid pursuant hereto, on and after the Effective Date, the Released Parties and their respective property are released and discharged by the Reorganized Debtor from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Reorganized Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing or hereinafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, that the Reorganized Debtor would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Existing Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Debtor's Chapter 11 Case, the SHA, the purchase, sale or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Existing Interest that is treated in the Plan, the business or contractual arrangements between the Debtor, Reorganized Debtor, or Estate and any Released Party, the restructuring of Claims and Existing Interests before or during the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, the Plan Supplement or related agreements, instruments or other documents, or with respect to any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; provided, however, that nothing in this Article VIII.D shall be construed to release any party or entity from gross negligence, intentional fraud, willful misconduct, or criminal conduct, as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor releases pursuant to this Article VIII.D, which includes by reference each of the related provisions and definitions contained herein, and further shall constitute the Bankruptcy Court's finding that such Debtor releases are (i) in exchange for the good and valuable consideration provided by the Released Parties, (ii) a good faith settlement and compromise of the Claims released by such Debtor releases, (iii) in the best interests of the Debtor and all holders of Claims and Existing Interests, (iv) fair, equitable and reasonable, (v) given and made after due notice and opportunity for hearing, and (vi) a bar to any of the Debtor or the Reorganized Debtor asserting any Claim or Cause of Action released pursuant to such Debtor releases.

E.  *Exculpation*

Except as otherwise specifically provided in the Plan or Plan Supplement, no Released Party shall have or incur, and each Released Party is hereby released and exculpated from, any Exculpated Claim, obligation, Cause of Action or liability for any Exculpated Claim.  The Plan Proponents, Debtor and Reorganized Debtor (and each of their respective Affiliates, agents, directors, officers, employees, advisors and attorneys) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the Plan consideration, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.  *Injunction*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR EXISTING INTERESTS THAT HAVE BEEN RELEASED, DISCHARGED, OR ARE SUBJECT TO EXCULPATION, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE APPLICABLE PERSONS:  (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EXISTING INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EXISTING INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATES OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EXISTING INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EXISTING INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THE PLAN.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND EXISTING INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND EXISTING INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS

36

ASSETS, PROPERTY OR ESTATE. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE. ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, THE REORGANIZED DEBTOR, EACH OF ITS SUCCESSORS AND ASSIGNS, AND EACH OF ITS ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR EXISTING INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

*G. Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE

*A. Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C.

1.　The Confirmation Order shall be in form and substance acceptable to the Plan Proponents in their sole discretion and shall include a determination by the Bankruptcy Court that the SHA has been terminated by its terms, including §§ 1.9, 1.11 and 23.1 thereof and/or that the SHA has been rejected in the Plan Proponents' sole discretion.

2.　The Plan, the Plan Supplement, any Purchase Agreement, and any document evidencing a Transaction, including any schedules, documents, supplements and exhibits thereto shall, in form and substance, be acceptable to the Plan Proponents in their sole discretion.

37

3.      No Proofs of Claim or other liabilities shall have been filed or asserted by any Person on account of any matter unless such Proof of Claim or other liability has been determined to the Plan Proponents' satisfaction in their sole discretion.

B.   *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C.

1.      The Bankruptcy Court shall have entered one or more orders (which may include the Confirmation Order) authorizing the assumption and rejection of Executory Contracts as contemplated herein in form and substance acceptable to the Plan Proponents in their sole discretion.

2.      The Confirmation Order  shall have been entered by the Bankruptcy Court and shall not be subject to any stay subject to an unresolved request for revocation under section 1144 of the Bankruptcy Code.

3.      The New Money Loan Offering shall have been consummated, unless the Plan Proponents determine in their sole discretion not to consummate the New Money Loan Offering.

4.      All of the schedules, documents, supplements and exhibits to the Plan shall have been filed in form and substance acceptable to the Plan Proponents in their sole discretion.

5.      All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of the Plan shall have been obtained.

6.      All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws.  All conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof.

C.   *Waiver of Conditions*

The conditions to Confirmation of the Plan and to consummation of the Plan set forth in this Article IX may be waived at any time by the Plan Proponents in their sole discretion.

D.   *Effect of Failure of Conditions*

If the consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall:  (1) constitute a waiver or release of any Claims against or Existing Interests in the Debtor; (2) prejudice in any manner the rights of

38

the Debtor, any holders of Claims or any other Person; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any holders or any other Person in any respect.

## ARTICLE X

## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### A.  *Modification and Amendments*

The Plan Proponents reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their rights to alter, amend or modify materially the Plan one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan or remedy any defect or omission, or reconcile any inconsistencies in the Plan or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

### B.  *Revocation or Withdrawal of the Plan*

The Plan Proponents reserve the right to revoke or withdraw the Plan before the Effective Date.  If the Plan Proponents revoke or withdraw the Plan, or if Confirmation or consummation of the Plan does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Existing Interest or Class of Claims or Existing Interests), assumption or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Existing Interests; (b) prejudice in any manner the rights of the Debtor, the Plan Proponents or any other Person; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Plan Proponents or any other Person.

## ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and all matters arising out of or related to the Chapter 11 Case and the Plan including jurisdiction to:

1.       allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured or unsecured status, or amount of any Claim or Existing Interest, including the

39

resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption, assumption and assignment or rejection of any Executory Contract to which the Debtor is party or with respect to which the Debtor may be liable in any manner and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Claims based on the Debtor's rejection of Executory Contracts, Cure Claims pursuant to section 365 of the Bankruptcy Code or any other matter related to such Executory Contract; (b) any potential contractual obligation under any Executory Contract that is assumed; (c) the Reorganized Debtor amending, modifying or supplementing, after the Effective Date, any Executory Contracts or the list of Executory Contracts to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired.

4.      ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6.      adjudicate, decide or resolve any and all matters related to any Cause of Action;

7.      adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      resolve any avoidance or recovery actions under sections 105, 502(d), 542 through 551 and 553 of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Person's obligations incurred in connection with the Plan;

10.     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the discharge, releases, injunctions, exculpations, indemnifications and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

40

12.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

13.    adjudicate any and all disputes arising from or relating to distributions under the Plan;

14.    consider any modifications of the Plan, cure any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

15.    determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

16.    hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan, including the Amended Kirwan Governance Documents and the Board and Shareholder Circulars;

17.    hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

18.    hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge;

19.    determine any other matters that may arise in connection with or related to the Plan or the Confirmation Order;

20.    enforce all orders previously entered by the Bankruptcy Court;

21.    hear any other matter not inconsistent with the Bankruptcy Code; and

22.    enter an order concluding or closing the Chapter 11 Case.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

### A.  *Immediate Binding Effect*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor and any and all holders of Claims or Existing Interests (irrespective of whether such Claims or Existing Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases,

41

discharges and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts with the Debtor.

B. *Additional Documents*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or Reorganized Debtor, as applicable, and all holders of Claims or Existing Interests and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C. *Reservation of Rights*

None of the Plan, any statement or provision contained in the Plan or any action taken or not taken by the Plan Proponent or the Debtor with respect to the Plan or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Plan Proponent or the Debtor with respect to the holders of Claims or Existing Interests before the Effective Date.

D. *Successors and Assigns*

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries or guardian, if any, of each Person.

E. *Service of Documents*

After the Effective Date, any pleading, notice or other document required by the Plan to be served or delivered shall be served as follows:

1.    If to the Plan Proponents, to:

VR Capital Group Ltd.
300 Park Avenue, Suite 1602
New York, New York  10022
Attn:  Sina Toussi

with copies to:

Skadden, Arps, Slate, Meagher and Flom LLP
4 Times Square

42

New York, New York 10036
Attn:  Mark A. McDermott

2.     After the Effective Date, the Debtor may, in its sole discretion, notify Persons that, in order to continue receiving documents pursuant to Bankruptcy Rule 2002, such Persons must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtor is authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to those Persons who have filed such renewed requests.

### F.   *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

### G.   *Severability of Plan Provisions*

If, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court or any other court exercising proper jurisdiction to be invalid, void or unenforceable, the Bankruptcy Court or other court exercising proper jurisdiction shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. Notwithstanding the foregoing, if any provision of the Plan is materially altered or rendered unenforceable, the Plan shall not be confirmed without the written consent of the Plan Proponents..

### H.   *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon request to the Plan Proponents' counsel, by contacting Skadden, Arps, Slate, Meagher and Flom LLP, 4 Times Square, New York, New York 10036, or by accessing the Bankruptcy Court's website at https://ecf.nysb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: February ~~15~~28, 2017

Respectfully submitted,

~~Lapidem~~LAPIDEM, ~~Ltd~~LTD.,

By: */s/Emile du Toit*
Name: Emile du Toit
Title: Director

~~Mascini Holdings, Limited,~~

MASCINI HOLDINGS LIMITED

By: */s/Emile du Toit*
Name: Emile du Toit
Title: Director

Jay M. Goffman
Mark A. McDermott
Raquelle L. Kaye

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM, LLP
Four Times Square
New York, New York 10036-6522
(212) 735-3000

Counsel for Lapidem, Ltd. and Mascini Holdings
Ltd.

44

## Schedule A
### Existing Loans

| Date | Amount |
|------|--------|
| **Mascini USD Loan Agreements** | |
| 30 August 2007 | $127,500,000.00 |
| 30 August 2007 | $21,000,000.00 |
| 07 December 2007 | $300,000.00 |
| 29 January 2008 | $600,000.00 |
| April 2008 | $600,000.00 |
| 11 June 2008 | $500,000.00 |
| 06 August 2008 | $600,000.00 |
| 03 October 2008 | $900,000.00 |
| April 2009 | $350,000.00 |
| June 2009 | $350,000.00 |
| 27 July 2009 | $900,000.00 |
| 19 October 2009 | $900,000.00 |
| November 2009 | $1,800,000.00 |
| 21 December 2009 | $2,304,000.00 |
| 26 March 2010 | $300,000.00 |
| May 2010 | $600,000.00 |
| 23 July 2010 | $600,000.00 |
| 10 September 2010 | $600,000.00 |
| 23 December 2010 | $1,020,000.00 |
| 04 March 2011 | $420,000.00 |
| 07 July 2011 | $441,000.00 |

1

| Date | Amount |
|------|--------|
| 07 August 2012 | $360,000.00 |
| 30 May 2013 | $12,000.00 |
| 22 August 2013 | $416,000.00 |
| 18 September 2013 | $65,000.00 |
| 26 September 2013 | $6,000.00 |
| 01 November 2013 | $2,700.00 |
| 12 November 2013 | $60,000.00 |
| 03 December 2013 | $87,000.00 |
| 31 December 2013 | $25,200.00 |
| 29 January 2014 | $21,000.00 |
| 03 February 2014 | $26,000.00 |
| 20 March 2014 | $52,200.00 |
| 24 April 2014 | $164,100.00 |
| 28 May 2014 | $127,000.00 |
| 21 July 2014 | $20,400.00 |
| 03 September 2014 | $51,000.00 |
| 16 September 2014 | $3,500.00 |
| 12 November 2014 | $80,000.00 |
| 23 December 2014 | $129,000.00 |
| 13 January 2015 | $45,000.00 |
| 18 March 2015 | $93,500.00 |
| 17 April 2015 | $1,200,000.00 |
| 21 August 2015 | $2,400,000.00 |
| **TOTAL** | **$168,031,600.00** |

2

| Date | Amount |
|------|--------|
| **Mascini EUR Loan Agreements** | |
| 30 March 2011 | € 24,894,359.53 |
| **TOTAL** | **€ 24,894,359.53** |
| **Lapidem USD Loan Agreements** | |
| 30 August 2007 | $85,000,000.00 |
| 30 August 2007 | $14,000,000.00 |
| 07 December 2007 | $200,000.00 |
| 29 January 2008 | $400,000.00 |
| April 2008 | $400,000.00 |
| 11 June 2008 | $333,333.00 |
| 06 August 2008 | $400,000.00 |
| 03 October 2008 | $600,000.00 |
| April 2009 | $233,333.00 |
| 15 June 2009 | $233,333.00 |
| 27 July 2009 | $600,000.00 |
| 19 October 2009 | $600,000.00 |
| November 2009 | $1,200,000.00 |
| 21 December 2009 | $1,536,000.00 |
| 26 March 2010 | $200,000.00 |
| May 2010 | $400,000.00 |
| 23 July 2010 | $400,000.00 |
| 08 September 2010 | $400,000.00 |
| 23 December 2010 | $680,000.00 |
| 04 March 2011 | $280,000.00 |

3

| Date | Amount |
|------|--------|
| 07 July 2011 | $294,000.00 |
| 05 June 2012 | $132,000.00 |
| 07 August 2012 | $108,000.00 |
| 30 May 2013 | $8,000.00 |
| 22 August 2013 | $277,000.00 |
| 18 September 2013 | $43,000.00 |
| 26 September 2013 | $4,000.00 |
| 01 November 2013 | $1,800.00 |
| 12 November 2013 | $40,000.00 |
| 03 December 2013 | $58,000.00 |
| 31 December 2013 | $16,800.00 |
| 29 January 2014 | $14,000.00 |
| 03 February 2014 | $18,000.00 |
| 20 March 2014 | $34,800.00 |
| 24 April 2014 | $109,400.00 |
| 28 May 2014 | $85,000.00 |
| 21 July 2014 | $13,600.00 |
| 03 September 2014 | $34,000.00 |
| 16 September 2014 | $2,500.00 |
| 12 November 2014 | $55,000.00 |
| 23 December 2014 | $86,000.00 |
| 13 January 2015 | $30,000.00 |
| 18 March 2015 | $62,500.00 |
| 17 April 2015 | $800,000.00 |

4

| Date | Amount |
|------|--------|
| 21 August 2015 | $1,600,000.00 |
| **TOTAL** | **$112,023,399.00** |
| **Lapidem EUR Loan Agreements** | |
| 30 March 2011 | € 16,596,239.69 |
| **TOTAL** | **€ 16,596,239.69** |

5

**Schedule B**

**<u>Allowed General Unsecured Claims</u>**

| | |
|---|---|
| <u>Akin Gump Strauss Hauer & Feld</u> | <u>$491,646.18</u> |
| <u>Clifford Chance</u> | <u>€1,674,135.61</u> |
| <u>Houthoff Buruma</u> | <u>€689,616.69</u> |
| <u>MZS & Partners</u> | <u>€3,295.00</u> |
| <u>The Michel-Shaked Group</u> | <u>$3,616.50</u> |

1

## Schedule C
## PNS Transition Matters

1.    <u>Preliminary steps</u>.  Stephen Lynch shall deliver to each of Lapidem and Mascini complete and detailed lists (the "<u>Detailed List</u>") of:

(a)    all current employees of PNS, listing their names, positions, compensation and additional arrangements;

(b)    all bank accounts and securities accounts of PNS and all means of access/control over such accounts, including any specimen bank cards, bank-client online systems, etc.;

(c)    all agreements that are in force to which PNS is a party;

(d)    all powers of attorney issued on behalf of PNS to any party which are in force (including any subsequent powers of attorney further delegating any powers);

(e)    all registration certificates, including corporate registration, tax registration and title certificates pertaining to PNS, specifying the location at which the originals of such certificates are kept;

(f)    all minutes and resolutions of PNS' governing bodies, specifying the location at which the originals are kept;

(g)    all internal documents, bylaws and regulations of PNS currently in force, specifying the location at which the originals are kept;

(h)    all corporate seals of PNS specifying the location at which they are kept; and

(i)    all offices of PNS, means of access to such offices and persons holding such means of access (keys, keycards, etc.).

2.    <u>Implementation steps</u>.  Stephen Lynch thereafter:

(a)    shall deliver to each of Lapidem and Mascini a confirmation that each Detailed List is complete and accurate as of the date of the Transfer Agreement;

(b)     shall deliver to each of Lapidem and Mascini evidence satisfactory to each of Lapidem and Mascini of:

     (i)     termination of all powers to manage accounts referred to in paragraph 1(b) above by Mr. Lynch and, to the extent Lapidem or Mascini requested that such powers be revoked, by any other person; and

     (ii)     revocation of each power of attorney referred to in paragraph 1(d) above to the extent Lapidem or Mascini requested that such power of attorney be revoked;

(c)     shall deliver a written resignation as general director and execute and promptly file any necessary documents to effectuate the appointment of such person designated by Lapidem and Mascini as the new general director;

(d)     shall deliver to shall deliver to Lapidem and Mascini or the new general director of PNS as designated by them:

     (i)     an original of each agreement referred to in paragraph 1(c) above;

     (ii)     an original of each certificate referred to in paragraph 1(e) above;

     (iii)     an original of each resolution or set of minutes referred to in paragraph 1(f) above;

     (iv)     an original of each document referred to in paragraph 1(g) above;

     (v)     all corporate seals referred to in paragraph 1(h) above; and

     (vi)     all means of access referred to in paragraph 1(i) above.

C-2

## Schedule CD

## Yukos Finance Litigation

The proceedings under case number 200.002.097/01 between Godfrey, Misamore, and Yukos Finance B.V. (as represented by Godfrey), and Misamore v. Promneftstroy and Yukos Finance B.V. (as represented by Lynch and Reid), and under case number 200.002.104/01 between Godfrey, Misamore, and Yukos Finance B.V. (as represented by Godfrey) v. Promneftstroy, Shmelkov and Yukos Finance B.V. (as represented by Lynch and Reid) in the Amsterdam Court of Appeals;

The proceeding styled Yukos Capital S.à.r.l. v. Yukos Oil Company in the Amsterdam District Court at docket number 419369/09/449;

The proceeding styled Glendale v. Yukos Oil Company in the Amsterdam District Court at docket number 08/3565; and

JUDGMENT  6 March 2008, Civil-law Section, Preliminary Relief Judge, case/cause-list number: 388931 / KG ZA 08-104 P/CN
Parties
1. the legal entity under the laws of the Russian Federation, 000 PROMNEFTSTROY, having its registered office in Moscow, Russian Federation, claimant by summons dated 21 January 2008, counsel mr. D.J. Oranje,
2. the legal entity under the laws of the Russian Federation, OAO ROSNEFT, and having its registered office in Moscow, Russian Federation, claimant by summons dated 21 January 2008, Counsel mr. M. Deckers,
vs.
1. the private company with limited liability YUKOS INTERNATIONAL UK. B.V., having
its registered office in Amsterdam, the Netherlands
2. DAVID ANDREW GODFREY, residing in Honolulu, Hawaii, United States
3. BRUCE KELVERN MISAMORE, residing in Houston, Texas, United States defendants, Counsel mr. R.J. van Galen,
4. the company under foreign law, MORAVEL INVESTMENT LIMITED, having its registered office in Limassol, Cyprus, joining party on the part of the defendants, Counsel mr. A.A.H.J. Huizing,


JUDGMENT 24 February 2009, Case number: 200.005.433/01 SKG
Parties
1. the private company with limited liability YUKOS INTERNATIONAL UK. B.V., having
its registered office in Amsterdam, the Netherlands
2. DAVID ANDREW GODFREY, residing in Honolulu, Hawaii, United States
3. BRUCE KELVERN MISAMORE, residing in Houston, Texas, United States
Appellants and respondents in the cross-appeal, Counsel mr. R.J. van Galen,
vs.
1. the legal entity under the laws of the Russian Federation, 000 PROMNEFTSTROY, having its registered office in Moscow, Russian Federation, Respondent and cross-appellant, Counsel mr. D.J. Oranje,
2. the legal entity under the laws of the Russian Federation, OAO ROSNEFT, and having its registered office in Moscow, Russian Federation, Respondent, Counsel mr. M. Deckers,

JUDGMENT 7 January 2011, Case number: 09/02232, Supreme Court of the Netherlands
Judgment in the case of:

D-1

1107522-NYCSR02A—MSW

1.      YUKOS INTERNATIONAL UK B.V., with its registered office in Amsterdam,
2.      David Andrew GODFREY, residing in Honolulu, Hawaï, United States of America,
3.      Bruce Kelvern MISAMORE, residing in Houston, Texas, United States of America,
CLAIMANTS in cassation proceedings, attorney: mr. K.G.W. van Oven,

vs.

1.      OOO PROMNEFTSTROY, with its registered office in Moscow, Russian Federation,
DEFENDANT in cassation proceedings, attorney: mr. E. Grabandt,
2.      OAO ROSNEFT, with its registered office in Moscow, Russian Federation, DEFENDANT in
cassation proceedings, failed to make an appearance.

D-2

1107522-NYCSR02A - MSW

Redline KirwanPlan 1107522v6 and KirwanPlan 1107522v9 2/28/2017 2:33:14 PM

Case 1:17-cv-04339-CM   Document 13-7   Filed 07/13/17   Page 39 of 88

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
Mark A. McDermott
Raquelle Kaye
Four Times Square
New York, New York 10036
(212) 735-3000

*Counsel to Lapidem Ltd.*
 *and Mascini Holdings Limited*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **KIRWAN OFFICES S.À R.L.,** | : | **Case No. 16-22321 (RDD)** |
| | : | |
| **Debtor.** | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, Jason N. Kestecher, an attorney with the law firm of Skadden, Arps, Slate,

Meagher & Flom LLP, hereby certify that on February 28, 2017, I caused the following

documents to be served via the method set forth on the notice parties service list attached hereto

as Exhibit A.

- Order Signed on 2/28/2017 Establishing Bar Date For Filing Proofs of Claims and
  Approving Form and Manner of Notice Thereof (Docket No. 108)

- Order Signed on 2/28/2017 Establishing Procedures with Respect to Plan Confirmation.
  (Docket No. 109)

- Notice Of Filing Of The Combined First Amended Plan Of Reorganization And
  Disclosure Statement Of Kirwan Offices S.a r.l. (Docket No. 110)

- Notice of Deadline For Filing Of Proofs Of Claim

- Proof Of Claim Form – Official Form 410

- Notice Of Confirmation Hearing

On February 28, 2017, I caused the following documents to be served via the method set forth on the notice parties service list attached hereto as <u>Exhibit B</u>.

- Subscription Form For Mr. Stephen Lynch For New Money Participation In Connection With Kirwan Offices, S.a.r.l.'s Plan Of Reorganization

- Ballot For Accepting Or Rejecting The Chapter 11 Plan Of Reorganization Of Kirwan Offices S.a.r.l.

Additionally, electronic correspondence as proof of certain e-mail service is attached hereto as <u>Exhibit C</u>.

Dated: New York, New York
March 1, 2017

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: <u>/s/ Jason N. Kestecher</u>
Jay M. Goffman
Mark A. McDermott
Raquelle Kaye
Jason N. Kestecher
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Counsel to Lapidem Ltd.*
*and Mascini Holdings Limited*

**EXHIBIT A**

| NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|
| Office of The United States Trustee | Attn: Greg M. Zipes<br>Office of The United States Trustee<br>U.S. Federal Office Building<br>201 Varick Street, Suite 1006<br>New York, NY 10014 | | Overnight Courier |
| U.S. Securities and Exchange Commission | Attn: Andrew Calamari<br>U.S. Securities and Exchange Commission<br>New York Regional Office<br>Brookfield Place<br>200 Vesey Street, Suite 400<br>New York, NY 10281 | | Overnight Courier |
| Internal Revenue Service | Internal Revenue Service<br>Centralized Insolvency Operations<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | | Express Mail |
| Akin Gump Strauss Hauer & Feld LLP | Attn: Robert H. Pees<br>Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, NY 10036 | | Overnight Courier |
| Mandel Bhandari LLP | Attn: Rishi Bhandari<br>Mandel Bhandari LLP<br>80 Pine Street<br>33rd Floor<br>New York, NY 10005 | | Overnight Courier |
| Kirwan Offices S.à r.l. | Kirwan Offices S.à r.l.<br>11-13 Boulevard de la Foire<br>Luxembourg, Luxembourg<br>L-1528 | | Courier |

633

16-22321-rdd Doc 111 Filed 03/01/17 Entered 03/01/17 13:53:09 Main Document Pg 5 of 19

| | | | |
|---|---|---|---|
| Amicorp Luxembourg S.A. | Amicorp Luxembourg S.A.<br>11-13 Boulevard de la Foire<br>Luxembourg, Luxembourg<br>L-1528 | | Courier |
| | Attn: Stephen P. Lynch<br>Ul. Sadovnicheskaya<br>str 1, #110, House 74<br>Moscow, Russia 115035<br><br>-and-<br><br>Attn: Stephen P. Lynch<br>Ul. Letnikovskaya #2<br>Str 3, #9<br>Moscow, Russia 115114 | slynch@monte-valle.sg<br>stephenplynch@yahoo.com | |
| Stephen P. Lynch | | | Courier<br>Email |
| Gibson, Dunn & Crutcher LLP | Attn: Matthew K. Kelsey<br>Attn: Samuel A. Newman<br>Attn: Ian T. Long<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166-0193 | MKelsey@gibsondunn.com<br>SNewman@gibsondunn.com<br>ILong@gibsondunn.com | Overnight Courier<br>Email |
| Houthoff Buruma | Attn: Marielle Koppenol-Laforce<br>Houthoff Buruma<br>Weena 355<br>3013 AL Rotterdam<br>The Netherlands | m.koppenol@houthoff.com | Courier<br>Email |
| Clifford Chance LLP | Attn: Jeroen Ouwehand<br>Clifford Chance LLP<br>Droogbak 1A<br>P.O. Box 251<br>1000 AG Amsterdam<br>The Netherlands | jeroen.ouwehand@cliffordchance.com | Courier<br>Email |

2

634

| | | |
|---|---|---|
| Monastyrsky, Zyuba, Stepanov & Partners | Attn: Dmitry Lovyrev<br>Attn: Alena Shubina<br>Monastyrsky, Zyuba, Stepanov & Partners<br>3/1 Novinsky Boulevard<br>Moscow, Russia 121099 | shubina@mzs.ru<br>lovyrev@mzs.ru |
| | | Courier |
| FDS Law | Attn: Andrei Sandakov<br>FDS Law<br>3-y Pavlovskiy pereulok, 1<br>Stroyenie 57, Suite 227<br>Moscow, Russia 115093 | sandakov@fds-law.com |
| | | Courier<br>Email |
| The Michel Shaked Group | Attn: President or General Counsel<br>The Michel Shaked Group<br>2 Park Plaza, Suite 500<br>Boston, MA 02116 | |
| | | Overnight Courier |

3

635

**EXHIBIT B**

16-22321-rdd   Doc 111   Filed 03/01/17   Entered 03/01/17 13:53:09   Main Document
Pg 8 of 19

| NAME | ADDRESS | EMAIL | METHOD OF SERVICE |
|---|---|---|---|
| Stephen P. Lynch | Attn: Stephen P. Lynch<br>Ul. Sadovnicheskaya<br>str 1, #110, House 74<br>Moscow, Russia 115035<br><br>-and-<br><br>Attn: Stephen P. Lynch<br>Ul. Letnikovskaya #2<br>Str 3, #9<br>Moscow, Russia 115114 | slynch@monte-valle.sg<br>stephenplynch@yahoo.com | Courier<br>Email |
| FDS Law | Attn: Andrei Sandakov<br>FDS Law<br>3-y Pavlovskiy pereulok, 1<br>Stroyenie 57, Suite 227<br>Moscow, Russia 115093 | sandakov@fds-law.com | Courier<br>Email |

**EXHIBIT C**

| From: | Kestecher, Jason N (NYC) |
|---|---|
| Sent: | Tuesday, February 28, 2017 1:30 PM |
| To: | 'slynch@monte-valle.sg'; 'Sandakov@fds-law.com' |
| Cc: | McDermott, Mark A (NYC); Kaye, Raquelle L (NYC) |
| Subject: | Orders Entered in Kirwan Offices Sarl |
| Attachments: | Bar Date Order.pdf; Confirmation Procedures Order.pdf; Form of ballot.pdf |

Gentlemen,

Please find attached two orders entered today in *In re Kirwan Offices S.a r.l* (Bankr. S.D.N.Y. Case No. 16-22321).

Regards,

Jason Kestecher

**Jason N. Kestecher**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.2629 | F: 917.777.2629
jason.kestecher@skadden.com

| | |
|---|---|
| **From:** | Kestecher, Jason N (NYC) |
| **Sent:** | Tuesday, February 28, 2017 1:34 PM |
| **To:** | 'slynch@monte-valle.sg'; 'Sandakov@fds-law.com' |
| **Cc:** | McDermott, Mark A (NYC); Kaye, Raquelle L (NYC) |
| **Subject:** | Kirwan Offices Bar Date Notice Package |
| **Attachments:** | Proof of Claim Form.pdf; Notice of Proof of Claim Deadline.pdf; Bar Date Order.pdf |

Gentlemen,

Please find attached the bar date notice package in *In re Kirwan Offices S.a r.l* (Bankr. S.D.N.Y. Case No. 16-22321).

Regards,

Jason Kestecher

**Jason N. Kestecher**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.2629 | F: 917.777.2629
jason.kestecher@skadden.com

| | |
|---|---|
| **From:** | Kestecher, Jason N (NYC) |
| **Sent:** | Tuesday, February 28, 2017 1:49 PM |
| **To:** | 'slynch@monte-valle.sg'; 'Sandakov@fds-law.com' |
| **Cc:** | McDermott, Mark A (NYC); Kaye, Raquelle L (NYC) |
| **Subject:** | Kirwan Offices - Notice of Confirmation Hearing |
| **Attachments:** | Notice of Confirmation Hearing.pdf |

Gentlemen,

Please find attached the Notice of Confirmation Hearing in *In re Kirwan Offices S.a r.l* (Bankr. S.D.N.Y. Case No. 16-22321).

Regards,

Jason Kestecher

**Jason N. Kestecher**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.2629 | F: 917.777.2629
jason.kestecher@skadden.com

| | |
|---|---|
| **From:** | Kestecher, Jason N (NYC) |
| **Sent:** | Tuesday, February 28, 2017 2:11 PM |
| **To:** | 'slynch@monte-valle.sg'; 'Sandakov@fds-law.com' |
| **Cc:** | Kaye, Raquelle L (NYC); McDermott, Mark A (NYC) |
| **Subject:** | Kirwan Offices - Subscription Agreement |
| **Attachments:** | Subscription Agreement.pdf |

Gentlemen,

Please find attached the subscription agreement in *In re Kirwan Offices S.a r.l* (Bankr. S.D.N.Y. Case No. 16-22321).

Regards,

Jason Kestecher

**Jason N. Kestecher**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.2629 | F: 917.777.2629
jason.kestecher@skadden.com

| From: | Kestecher, Jason N (NYC) |
|-------|--------------------------|
| Sent: | Tuesday, February 28, 2017 2:29 PM |
| To: | 'stephenplynch@yahoo.com' |
| Cc: | Kaye, Raquelle L (NYC); McDermott, Mark A (NYC) |
| Subject: | FW: Kirwan Offices Bar Date Notice Package |
| Attachments: | Proof of Claim Form.pdf; Notice of Proof of Claim Deadline.pdf; Bar Date Order.pdf |

See below and attached.

**Jason N. Kestecher**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.2629 | F: 917.777.2629
jason.kestecher@skadden.com

**From:** Kestecher, Jason N (NYC)
**Sent:** Tuesday, February 28, 2017 1:34 PM
**To:** 'slynch@monte-valle.sg'; 'Sandakov@fds-law.com'
**Cc:** McDermott, Mark A (NYC); Kaye, Raquelle L (NYC)
**Subject:** Kirwan Offices Bar Date Notice Package

Gentlemen,

Please find attached the bar date notice package in *In re Kirwan Offices S.a r.l* (Bankr. S.D.N.Y. Case No. 16-22321).

Regards,

Jason Kestecher

**Jason N. Kestecher**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.2629 | F: 917.777.2629
jason.kestecher@skadden.com

| **From:** | Kestecher, Jason N (NYC) |
|---|---|
| **Sent:** | Tuesday, February 28, 2017 2:29 PM |
| **To:** | 'stephenplynch@yahoo.com' |
| **Cc:** | McDermott, Mark A (NYC); Kaye, Raquelle L (NYC) |
| **Subject:** | FW: Orders Entered in Kirwan Offices Sarl |
| **Attachments:** | Bar Date Order.pdf; Confirmation Procedures Order.pdf; Form of ballot.pdf |

See below and attached.

**Jason N. Kestecher**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.2629 | F: 917.777.2629
jason.kestecher@skadden.com

**From:** Kestecher, Jason N (NYC)
**Sent:** Tuesday, February 28, 2017 1:30 PM
**To:** 'slynch@monte-valle.sg'; 'Sandakov@fds-law.com'
**Cc:** McDermott, Mark A (NYC); Kaye, Raquelle L (NYC)
**Subject:** Orders Entered in Kirwan Offices Sarl

Gentlemen,

Please find attached two orders entered today in *In re Kirwan Offices S.a r.l* (Bankr. S.D.N.Y. Case No. 16-22321).

Regards,

Jason Kestecher

**Jason N. Kestecher**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.2629 | F: 917.777.2629
jason.kestecher@skadden.com

| From: | Kestecher, Jason N (NYC) |
| --- | --- |
| Sent: | Tuesday, February 28, 2017 2:30 PM |
| To: | 'stephenplynch@yahoo.com' |
| Cc: | McDermott, Mark A (NYC); Kaye, Raquelle L (NYC) |
| Subject: | FW: Kirwan Offices - Notice of Confirmation Hearing |
| Attachments: | Notice of Confirmation Hearing.pdf |

See below and attached.

**Jason N. Kestecher**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.2629 | F: 917.777.2629
jason.kestecher@skadden.com

**From:** Kestecher, Jason N (NYC)
**Sent:** Tuesday, February 28, 2017 1:49 PM
**To:** 'slynch@monte-valle.sg'; 'Sandakov@fds-law.com'
**Cc:** McDermott, Mark A (NYC); Kaye, Raquelle L (NYC)
**Subject:** Kirwan Offices - Notice of Confirmation Hearing

Gentlemen,

Please find attached the Notice of Confirmation Hearing in *In re Kirwan Offices S.a r.l* (Bankr. S.D.N.Y. Case No. 16-22321).

Regards,

Jason Kestecher

**Jason N. Kestecher**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.2629 | F: 917.777.2629
jason.kestecher@skadden.com

| **From:** | Kestecher, Jason N (NYC) |
|---|---|
| **Sent:** | Tuesday, February 28, 2017 2:30 PM |
| **To:** | 'stephenplynch@yahoo.com' |
| **Cc:** | McDermott, Mark A (NYC); Kaye, Raquelle L (NYC) |
| **Subject:** | FW: Kirwan Offices - Subscription Agreement |
| **Attachments:** | Subscription Agreement.pdf |

See below and attached.

**Jason N. Kestecher**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.2629 | F: 917.777.2629
jason.kestecher@skadden.com

**From:** Kestecher, Jason N (NYC)
**Sent:** Tuesday, February 28, 2017 2:11 PM
**To:** 'slynch@monte-valle.sg'; 'Sandakov@fds-law.com'
**Cc:** Kaye, Raquelle L (NYC); McDermott, Mark A (NYC)
**Subject:** Kirwan Offices - Subscription Agreement

Gentlemen,

Please find attached the subscription agreement in *In re Kirwan Offices S.a r.l* (Bankr. S.D.N.Y. Case No. 16-22321).

Regards,

Jason Kestecher

**Jason N. Kestecher**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.2629 | F: 917.777.2629
jason.kestecher@skadden.com

| | |
|---|---|
| **From:** | Kaye, Raquelle L (NYC) |
| **Sent:** | Tuesday, February 28, 2017 2:39 PM |
| **To:** | Kestecher, Jason N (NYC); 'slynch@monte-valle.sg'; 'Sandakov@fds-law.com'; 'stephenplynch@yahoo.com' |
| **Cc:** | McDermott, Mark A (NYC) |
| **Subject:** | Kirwan Offices - Revised Plan and Solicitation |
| **Attachments:** | KirwanPlan.doc; Redline - KirwanPlan.pdf; Kirwan_-_Class_4_Ballot.pdf; Subscription Agreement.pdf; Notice of Confirmation Hearing.pdf |

Gentlemen,

Please find attached the revised proposed Plan, which will be filed with the Court shortly. In addition, please find the following documents, which were previously served upon you: (i) Class 4 Ballot; (ii) Subscription Agreement; and (iii) Notice of Confirmation Hearing.

Regards,


**Raquelle L. Kaye**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.3756 | F: 917.777.3756
raquelle.kaye@skadden.com

1

| From: | Kaye, Raquelle L (NYC) |
|---|---|
| Sent: | Tuesday, February 28, 2017 3:10 PM |
| To: | Kestecher, Jason N (NYC); 'slynch@monte-valle.sg'; 'Sandakov@fds-law.com'; 'stephenplynch@yahoo.com' |
| Cc: | McDermott, Mark A (NYC) |
| Subject: | RE: Kirwan Offices - Revised Plan and Solicitation |
| Attachments: | Dkt. 110 Amended Plan.pdf |

Gentlemen,

Further to my email below, attached please find the as-filed version of the revised proposed Plan.

Regards,


**Raquelle L. Kaye**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**Four Times Square | New York | 10036-6522**
**T: 212.735.3756 | F: 917.777.3756**
raquelle.kaye@skadden.com

**From:** Kaye, Raquelle L (NYC)
**Sent:** Tuesday, February 28, 2017 2:39 PM
**To:** Kestecher, Jason N (NYC); 'slynch@monte-valle.sg'; 'Sandakov@fds-law.com'; 'stephenplynch@yahoo.com'
**Cc:** McDermott, Mark A (NYC)
**Subject:** Kirwan Offices - Revised Plan and Solicitation

Gentlemen,

Please find attached the revised proposed Plan, which will be filed with the Court shortly. In addition, please find the following documents, which were previously served upon you: (i) Class 4 Ballot; (ii) Subscription Agreement; and (iii) Notice of Confirmation Hearing.

Regards,


**Raquelle L. Kaye**
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.3756 | F: 917.777.3756
raquelle.kaye@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
Mark A. McDermott
Raquelle Kaye
Four Times Square
New York, New York 10036
(212) 735-3000

*Counsel to Petitioners*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **KIRWAN OFFICES S.À R.L.,** | : | **Case No. 16-22321 (RDD)** |
| | : | |
| **Debtor.** | : | |
| | : | |

### NOTICE OF CONFIRMATION HEARING

**PLEASE TAKE NOTICE** that on February 15, 2017, Lapidem Ltd. and Mascini

Holdings Limited (together, the "Petitioners"), by and through their undersigned counsel, filed

the *Plan Of Reorganization Of Kirwan Offices S.à r.l* [Docket No. 97] (as may be amended,

supplemented or otherwise modified, the "Plan") with the United States Bankruptcy Court for

the Southern District of New York (the "Bankruptcy Court"). Capitalized terms used in this

Notice which are not defined have the meanings set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE** that, on February 28, 2017, the Bankruptcy

Court entered the *Order Establishing Procedures With Respect To Plan Confirmation* [Docket

No. 109] (the "Scheduling Order").

**PLEASE TAKE FURTHER NOTICE that the Plan provides for releases,**

**exculpation and injunctions of certain conduct in Article VIII. The injunctions in the Plan**

**include a permanent injunction of the commencement or prosecution by any entity,**

whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released or exculpated pursuant to the Plan.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Scheduling Order, a hearing (the "Confirmation Hearing") will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge for the Southern District of New York, 300 Quarropas Street, New York, New York 10601, on **March 20, 2017 at 10:00 a.m. (Eastern Time)** or as soon thereafter as counsel can be heard, to consider the entry of an order confirming the Plan within the meaning of section 1129 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Confirmation Hearing may be continued from time to time by way of announcement of such continuance in open court, without further notice to parties in interest.

**PLEASE TAKE FURTHER NOTICE** that responses and objections, if any, to confirmation of the Plan (each, a "Plan Confirmation Objection") must (a) be made in writing; (b) comply with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York; (c) state the name and address of the objecting party and the nature and amount of any claim or interest asserted by such party against the Debtor, its estate or property; (d) state with particularity the legal and factual bases and nature of any objection to the Plan; and (e) be filed with the Bankruptcy Court together with proof of service thereof, and served on the following, so as to be ACTUALLY RECEIVED no later than **4:00 p.m. (prevailing Eastern time) on March 17, 2017**: (i) counsel to the Petitioners, Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036, Attn: Jay Goffman, Esq. (Jay.Goffman@skadden.com), Mark A. McDermott, Esq.

(Mark.McDermott@skadden.com) and Raquelle L. Kaye, Esq.  (Raquelle.Kaye@skadden.com);

(ii) the Office of the United States Trustee for the Southern District of New York, Office of the

United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, New York 10014,

Attn: Greg Zipes; and (iii) Stephen P. Lynch, Sadovnichiskaya Ul, House 74, str 1, #110,

Moscow, Russia 115035 (slynch@monte-valle.sg), with a copy to the Court's chambers.  **Plan**

**Confirmation Objections that are not timely filed and served in the manner set for above**

**shall not be considered by the Bankruptcy Court and shall be overruled.**

        **PLEASE TAKE FURTHER NOTICE** that a copy of the Plan and Scheduling Order

may be examined by any party in interest between the hours of 8:00 a.m. and 4:00 p.m., Monday

through Friday, excluding federal holidays, at the Office of the Clerk of the Bankruptcy Court

(the "Clerk"), 300 Quarropas Street, New York, New York 10601. Parties may also obtain a

copy of the Plan and Solicitation Procedures Order online through the Bankruptcy Court's

website (http://www.sdny.uscourts.gov) (a PACER account is required).


Dated:  New York, New York
        February 28, 2017

                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                        By:  /s/ Mark A. McDermott
                             Jay M. Goffman
                             Mark A. McDermott
                             Raquelle Kaye
                             Four Times Square
                             New York, New York 10036-6522
                             Telephone: (212) 735-3000
                             Fax: (212) 735-2000

                        *Counsel for Petitioners*

**In Re:**

*KIRWAN OFFICES S.A.R.L.*

*Case No. 16-22321-rdd*

---

*February 27, 2017*

---

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us by phone or email*

Min-U-Script® with Word Index

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 16-22321-rdd

- - - - - - - - - - - - - - - - - - -x

In the Matter of:


KIRWAN OFFICES S.A.R.L.,

         Debtor.

- - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                300 Quarropas Street

                White Plains, New York


                February 27, 2017

                10:13 AM







B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

1

2  Notice of Agenda Of Matters Scheduled for Hearing on February

3  27, 2017 at 10:00 A.M.

4

5  Hearing Regarding The Petitioners' (A) Motion For Entry Of An

6  Order Establishing Streamlined Procedures With Respect To Plan

7  Confirmation, (B) Motion For Entry Of An Order (I) Establishing

8  Deadlines For Submitting Proofs Of Claim, (II) Approving The

9  Form And Manner For Submitting Such Proofs Of Claim, And (III)

10  Approving Notice Thereof, And (C) Motion For Entry Of An Order

11  Scheduling An Expedited Telephonic Hearing And Shortening

12  Notice For Petitioners' Bar Date And Plan Confirmation

13  Procedures Motions (related document(s)100, 99, 98

14

15

16

17

18

19

20  Transcribed by:   Penina Wolicki

21  eScribers, LLC

22  352 Seventh Avenue, Suite #604

23  New York, NY 10001

24  (973)406-2250

25  operations@escribers.net

3

1

2   A P P E A R A N C E S:   (TELEPHONICALLY)

3   UNITED STATES DEPARTMENT OF JUSTICE

4         Office of the United States Trustee

5         201 Varick Street

6         Suite 1006

7         New York, NY 10014

8

9   BY:   GREG M. ZIPES, ESQ.

10

11

12   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

13         Attorneys for Lapidem Ltd. and Mascini Holdings Limited

14         4 Times Square

15         New York, NY 10036

16

17   BY:   MARK A. MCDERMOTT, ESQ.

18         RAQUELLE L. KAYE, ESQ.

19         JAY M. GOFFMAN, ESQ.

20         JONATHAN L. FRANK

21

22

23

24

25

4

1

2    GIBSON, DUNN & CRUTCHER LLP

3         Attorneys for Yukos International

4         333 South Grand Avenue

5         Los Angeles, CA 90071

6

7    BY:   J. KEITH BIANCAMANO, ESQ.

8         SAMUEL A. NEWMAN, ESQ.

9

10

11   FD ADVISORY LLP

12        Attorneys for Stephen P. Lynch

13        Russia

14

15   BY:   ANDREI SANDAKOV, ESQ.

16

17

18   STEPHEN P. LYNCH

19        Pro Se

20

21

22

23

24

25

1                    P R O C E E D I N G S

2           THE COURT:  All right.  In re Kirwan Offices S.a.r.l.

3           MR. MCDERMOTT:  Your Honor, Mark McDermott from

4    Skadden Arps, on behalf of Lapidem and Mascini, petitioning

5    creditors for Kirwan.

6           THE COURT:  Good morning.  There's no one in the

7    courtroom, but I know there are a number of people on the phone

8    on this matter.  You should only state your appearance if you

9    are on something other than listen only, and you intend to

10   speak.

11          MR. ZIPES:  Greg Zipes with the U.S. Trustee's Office.

12          THE COURT:  Okay, good morning.

13          Okay.  This is the petitioning creditors' motion to

14   establish confirmation procedures as well as a motion to set a

15   bar date.  Have there -- I saw the -- Mr. McDermott, I saw the

16   notice of proposed modified orders on this, which I have a copy

17   of.  I guess the only major change on this is -- although it's

18   not particularly major -- is the address for service for Mr.

19   Lynch.

20          MR. MCDERMOTT:  That's correct, Your Honor.  You may

21   have seen that Mr. Lynch filed a notice with his former counsel

22   requesting approval for Mr. Levin at Jenner & Block and Mr.

23   White to withdraw as counsel, based upon Mr. Lynch's

24   termination of their engagement that was filed last week, I

25   believe, at some point.

1          And in that withdrawal, Mr. Lynch included an

2    address -- both a mailing address and an email address.  And we

3    asked that the two orders that we filed with Your Honor include

4    his email address to follow precedent from the Southern

5    District, which we can advise Your Honor or send to you that

6    basically says in sum and substance, that email service on a

7    U.S. citizen who is a resident of Russia, service via email

8    suffices, given Russia's position under an international

9    convention that basically does not accept mail service.

10          So that's why we did that.  And that email address

11    that Mr. Lynch included on his withdrawal notice, is in fact,

12    the same email that I know my clients have been using with him

13    for the last few years, and it was part of the exhibits that we

14    tendered into evidence before Your Honor at the hearing a few

15    weeks ago, in particular some of the correspondence uses that

16    email address.

17          So without a lawyer and being a resident in Russia, we

18    wanted to make sure that we were proceeding absolutely as

19    carefully as possible.  And that's the background behind those

20    two changes.

21          THE COURT:  Okay.  And Mr. Lynch is on the phone live,

22    and I assume, among other reasons, it's because he got notice

23    of this hearing.

24          MR. MCDERMOTT:  Yes, we did set up -- obviously the

25    notice of the hearing was sent before his counsel was

1    separated.  And to ensure that he had as much access as

2    possible, we emailed him redlines of these orders that Your

3    Honor has, and we also set up this CourtCall for him, although

4    I'll note that we have not received any correspondence from him

5    or anybody purported to act on his behalf.  But we did take

6    those steps to make sure that he was properly apprised.

7            THE COURT:  Okay.  All right.  Well, the motion is

8    unopposed.  And by "the motion", I'm referring to the first one

9    on confirmation procedures.  Have there been any other

10   developments on it besides the amended orders -- amended

11   proposed order?

12           MR. MCDERMOTT:  None that -- I'm aware of none, Your

13   Honor.

14           THE COURT:  Okay.

15           MR. ZIPES:  Your Honor, it's Greg Zipes.  Could I be

16   heard very briefly from the U.S. Trustee's Office?

17           THE COURT:  Yes.

18           MR. ZIPES:  I wanted to note a few general comments

19   and then also specifics relating to this -- the confirmation

20   procedures.  One is, generally, it's an odd case in that

21   there's no debtor, as such, that's appearing before you.  It's

22   petitioning creditors.  And there's no -- among other things,

23   there's no application for debtor's counsel.

24           And I have been getting emails and discussing

25   procedures with Skadden Arps just to get basic compliance

1  relating to disbursements of this debtor.  And we've gotten

2  emails stating, from Skadden, what disbursements have been

3  made; but I do note the odd procedural posture of this.  And

4  that's a general comment.

5        As to the specific comments we have, we discussed

6  exculpations a little bit.  I think the petitioning creditors

7  are going to have to explain the basis for the exculpations a

8  little bit more when they go in for confirmation, and I

9  discussed that with them.

10       Also the plan provides for payment of unsecured

11  creditors in full.  And I asked for specifics on who the

12  unsecured creditors are, which is now part of this order that

13  the petitioning creditors are seeking approval of.

14       So my office is just going to reserve its rights when

15  this plan is filed, and we'll -- we may or may not have further

16  comments at confirmation time.

17       THE COURT:  Okay.  Just remind me:  I had assumed -- I

18  think this is correct -- that I had terminated exclusivity.  Is

19  that correct?

20       MR. MCDERMOTT:  That's correct, Your Honor.

21       THE COURT:  Okay.  All right.

22       MR. MCDERMOTT:  Mr. Zipes is correct.  We've spoken,

23  and as always, he and his office have been very cooperative.

24  I've told him that nothing today is meant to impact or

25  prejudice any issues or concerns or questions he may have about

 1   the plan, whether exculpations or otherwise.  We have included

 2   by name and amount the known unsecured creditors that are out

 3   there, both in the plan document and in the bar date papers,

 4   which we will get to.  And the intent is to pay them in full

 5   whatever they assert, as long as they're obviously allowed

 6   undisputed claims.  But at the least the ones we have included

 7   are all lawyers.  And as far as we know, those amounts are

 8   certainly what we understood them to be.

 9          THE COURT:  Subject to what may come out with the bar

10   date?

11          MR. MCDERMOTT:  Correct.

12          THE COURT:  Okay.  All right.  Well, I appreciate both

13   of those comments from the U.S. Trustee, and I also appreciate

14   that this motion is unopposed, and it does affect -- that fact

15   affects how I'm treating it.  But I do have some real

16   hesitation on one aspect of the motion that I want to talk

17   through with the petitioning creditors.

18          The motion seeks a ruling that no disclosure statement

19   is necessary.  And I accept that in the right circumstances,

20   given the language of 1125 of the Code, which says that a

21   disclosure statement is necessary for solicitation, that a

22   disclosure statement is not necessary if it is clear that the

23   creditors are either unimpaired or deemed to have rejected

24   under 1126/1124.

25          But in looking at the plan, it appears to me that as

1   far as the interest-holders are concerned, Class 4, the plan

2   kind of elides that issue by saying that Lapidem and Mascini

3   are deemed to accept the plan, because they're the plan

4   proponents, and therefore Class 4 is deemed to accept the plan.

5   It doesn't say that Class 4 is unimpaired or Class 4 is --

6   obviously deemed to object the plan, because it's not getting

7   anything.

8          So I think technically Class 4 is voting on the plan,

9   correct?

10          MR. MCDERMOTT:  We can set it up that way.  However --

11          THE COURT:  Well, I mean, it's not really -- it's not

12   really a plan issue so much as an issue for disclosure

13   statement, because the case law and the statute, I think, are

14   clear on this point that where you have a class that is voting,

15   in fact, there are two cases or three that say even if you're

16   not going to look to the vote, if you're looking to cram down

17   that class, you do need a disclosure statement.  And --

18          MR. MCDERMOTT:  You're raising all fair points that

19   I've actually put some thought in, Your Honor.  And I did

20   purposely elide the issue of that, in part, because we're not a

21   hundred percent sure which direction we're going to go here.

22          As we said in our motion and also in the plan, we are

23   in the midst of exploring some alternatives here.  There's a

24   possibility lightning strikes -- and I don't say that to

25   prejudge anything, because the efforts really are in earnest --

1    that we could come up with a solution here with some of the

2    parties we're talking to, that results in a recovery for

3    shareholders, in which case we'll follow a waterfall from the

4    pre-petition shareholders' agreements.  There's also a

5    possibility it just doesn't work out that way, and we just

6    terminate the shares.

7          One reason I put things in there the way I did is that

8    there are 2,500,001 shares in this debtor.  My clients own

9    2,500,000 of those, and we know we're going to support it.  The

10   only share that we don't own is that owned by Mr. Lynch.  And

11   at least the way I read the Code, even if you say that there's

12   voting here, I don't see any way that we can't carry the vote

13   in that class.

14         THE COURT:  Well, if that's true -- that's true.  But

15   I don't think it takes you out of the requirement, in that

16   situation, to have a disclosure statement.  Now, having said

17   that, I had two other views on this, and I appreciate I'm

18   talking somewhat in a vacuum, because there's no objection to

19   this motion, but that colors my views on it also.

20         First, as far as the disclosure statement requirement

21   is concerned, 105(d) expressly gives the Court the authority to

22   schedule the disclosure statement hearing with the confirmation

23   hearing, as long as it's not contrary to some other provision

24   of the Code.  And it's rare that you would do that other than

25   in a small business plan, but I think this is one of those

1   circumstances where it would be appropriate, both because of

2   timing issues that are highlighted in the motion, as well as

3   what you've just said, which is that here, the one party-in-

4   interest that the disclosure statement requirement would appear

5   to be for, other than the two plan proponents, is an owner of

6   the company, has been very current in the case, and appears to

7   me, based on the record of this case, to have a good

8   understanding of the debtor and the context in which it's in.

9           So it appears to me that one could combine the two

10  hearings.  And then --

11          MR. MCDERMOTT:  Well, that was actually my main

12  argument, Your Honor.  The main one for not even having one at

13  all, although we can certainly -- if Your Honor wants one, we

14  can certainly go that route or talk about that.  But the main

15  reason that I was seeking to be excused from it altogether is

16  that, to be honest, I'm not entirely sure what I'd put in a

17  disclosure statement that's going to actually educate somebody.

18          THE COURT:  Well, that's the next point I was going to

19  make, which is that it is also the case, although rare, that

20  the plan can serve as the disclosure statement.  Now, Mr. Zipes

21  raised an issue; maybe you want to beef up the discussion

22  either in the plan or in a separate document as to the

23  rationale for the injunction and release provisions in the

24  plan.  Maybe you want to add something about feasibility and

25  the ability of the plan proponents to come up with the

1    necessary money to pay the unsecured creditors.

2         MR. MCDERMOTT:  Okay.

3         THE COURT:  And maybe you also want to give the

4    rationale, if any, as to the -- why Mr. Lynch can invest up to

5    one million and the other two members are committed to invest

6    and can invest an aggregate two million.

7         Other than that, obviously, I'm suggesting that the

8    hearing on the disclosure statement would happen at

9    confirmation, but I'm just not sure whether there's anything

10   more to explain the workings of the plan to someone who I

11   believe is quite sophisticated, Mr. Lynch, than those three

12   things.

13        MR. MCDERMOTT:  What we can do, Your Honor, and we're

14   happy to do it, is to recast the document as plan, I guess, and

15   disclosure statement, and beef up those points, and frankly

16   think about anything else we want to add.  And we could get

17   that on file and out very, very quickly.

18        We have -- those are fair points.  I did talk to Mr.

19   Zipes in particular about feasibility as well.  So I'm happy to

20   address each of those matters and then put them on file and

21   serve them out.

22        THE COURT:  Okay.  And again, in part, my view of

23   this, besides the factors I've already mentioned, is affected

24   by the fact that no one's objected to the motion.

25        MR. MCDERMOTT:  I understand, Your Honor.

1          THE COURT:  So that would be my ruling on it.  I'm

2    comfortable with the timing, given the nature of the case and

3    the plan.  I think that you've been given as a confirmation and

4    now combined disclosure statement and confirmation hearing

5    date, March 20th.

6          MR. MCDERMOTT:  Okay.

7          THE COURT:  Is that your understanding too, or --

8          MR. MCDERMOTT:  I had --

9          THE COURT:  Ms. Li has told me March 20th is free.

10         MR. MCDERMOTT:  Okay.  We had not, but we're happy to

11   take it, Your Honor.

12         THE COURT:  Okay.  And given the timing, I think

13   probably noon on the 17th would be the date for objections.

14         MR. MCDERMOTT:  Okay.

15         THE COURT:  And also ballots.  Because I think that --

16   again, I think that Lapidem and Mascini will be casting a

17   ballot.  That's the only way they can carry that class.  And I

18   think a ballot should go to Mr. Lynch also.

19         MR. MCDERMOTT:  That's fair, although I think I say in

20   there -- and I can do a ballot -- but word something.  I can

21   put that in there, so --

22         THE COURT:  Okay.  All right.

23         MR. MCDERMOTT:  When would Your Honor like a brief?

24   And we are -- we are going to prepare a declaration from Mr.

25   Deitz.  And I assume, consistent with what we've experienced

1   with Your Honor before, that you prefer affirmative evidence by

2   way of declaration?

3          THE COURT:  Yes.  Also on the 17th.

4          MR. MCDERMOTT:  Okay.

5          THE COURT:  So does anyone have anything more to say

6   on this motion?

7          Okay.  I'll grant the motion as modified.  It's clear,

8   as I said earlier, from the motion as well as the motion to

9   shorten time, that the debtor here is under time pressure

10  caused largely by a scheduled ruling that may come out in mid-

11  April that would affect its sole asset.

12         It's also clear that this is a relatively simple

13  capital structure, maybe not even using the word "relatively".

14  It is a simple capital structure with very sophisticated

15  parties who are creditors and the interest-holders.

16         Further, the creditors are proposed to be unimpaired

17  under the plan, and it is clear from the record of this case

18  that the plan proponents, wearing their hats as interest-

19  holders, would carry the interest-holder class.

20         In light of all of those circumstances, it appears

21  clear to me that this is one of those rare situations where the

22  Court may, notwithstanding that this is not a small business

23  plan, combine the hearing on a disclosure statement and

24  confirmation of a plan under 11 U.S.C. 105(d)(2)(B)(vi).

25         As discussed by Collier, the leading treatise on

1   bankruptcy, the Court does have authority to do that, even in a

2   case that is not a small business case, where there's specific

3   authority in 1125 to do it.   See 7 Collier on Bankruptcy,

4   paragraph 1125.032(c), which discusses the In re General Growth

5   Properties, Inc. case, which is cited therein as well as in the

6   In re Luminent Capital Mortgage case, which is cited therein.

7   The General Growth case and the Luminent case are not published

8   opinions, but the record is clear in them, and Judge Gropper in

9   the General Growth Properties case, discussed this a fair

10   amount on the record and permitted a combination of the

11   hearings in that case.

12            There is a case by Judge Bernstein, In re Amster Yard

13   Associates, 214 B.R. 122 (Bankr. S.D.N.Y. 1997), where Judge

14   Bernstein declined to combine the two hearings, given the

15   nature of that case.   But he noted in footnote 5 of that

16   opinion that there may be instances where it would be

17   appropriate to do so.

18            I have done so on small business cases from time to

19   time where there were facts that warranted it.   I am doing that

20   because I believe notwithstanding the motion's request to

21   forego any disclosure statement, the plan proponents are

22   required to have one, given that they are soliciting -- well,

23   that they would need to solicit votes on the plan, given that

24   not all classes are either unimpaired or receiving no property

25   under the plan, and therefore deemed to reject the plan under

1    Section 1126 of the Bankruptcy Code.

2          It's clearly the case, I believe, that where there is

3    no one entitled to vote on a plan, even though they may object

4    to the plan, there's no need for a disclosure statement, based

5    in part on the authorities cited in the motion and the plain

6    language of Section 1125(a), which refers to the purpose of the

7    disclosure statement, which is to -- is a requirement to

8    soliciting votes on a plan.  Obviously if there are no votes to

9    be solicited, then one has to question why there's a need for a

10   disclosure statement.  See In re Colony Properties

11   International LLC, 2011 Bankr. LEXIS 3658 (Bankr. S.D. Ca,

12   September 9, 2011) and In re Union County Wholesale Tobacco and

13   Candy Co., Inc., 8 B.R. 442 (Bankr. D.N.J. 1981).  See also In

14   re Mid-Towne Associates 1994 U.S. App. LEXIS 24565 (6th Cir.,

15   September 8, 1994); In re Amster Yard Associates, 214 B.R. 124,

16   Note 5; and In re Stanley Hotel, Inc., 13 B.R. 926, 929 (Bank.

17   D. Colo., 1981), each of which state the proposition in dicta.

18         Collier also recognizes the potential where a plan

19   will not need voting for there to be no need for a disclosure

20   statement; 7 Collier on Bankruptcy, paragraph 1125.02.

21   However, Collier recognizes in that paragraph that the

22   proposition is a narrow one.  For example, if there's a dispute

23   over whether someone is unimpaired or not, it has been held

24   that there's a need for a disclosure statement.  See In re

25   Forrest Hills Associates, 18 B.R. 104 (Bankr. D. Del. 1982).

1          Moreover, it is clear that -- I believe at least,

2    under the case law, which is unanimous on this point, that if a

3    class is entitled to vote, there needs to be a disclosure

4    statement, even if the debtor is looking to cram down that

5    class, i.e., not looking to count its vote.  And further, or

6    more generically, it is, I believe, also clear that where a

7    class is impaired and entitled to vote, the parties in the case

8    can't simply agree that a disclosure statement is unnecessary,

9    or in light of the cost, is not required.

10         For the former proposition, see In re Transload and

11   Transport, Inc., 61 B.R. 379 (Bankr. M.D. La., 1986); In re

12   Feldman, 53 B.R. 355 (Bankr. S.D.N.Y. 1985); and In re Rail

13   King, Inc., 33 B.R. 4 (Bankr. N.D. Ohio, 1983).  For the latter

14   proposition, see In re Northwest Recreational Activities, Inc.,

15   8 B.R. 10 (Bankr. N.D. Ga. 1980), a Judge Norton opinion.

16         So I think a disclosure statement is technically

17   required.  However, again, as recognized by Collier, a

18   disclosure statement may be in the -- or the plan itself may

19   serve as the disclosure statement, i.e., the Bankruptcy Code

20   does not require that a plan of reorganization and a disclosure

21   statement be separate documents; 7 Collier on Bankruptcy

22   1125.031.  See also In re Bel Air Associates, 4 B.R. 168, 175

23   (Bankr. W.D.Okl. 1980).

24         Here, as I noted, and as Judge Norton noted in the

25   Northwest Recreational Activities, Inc. case that I previously

1  cited, there really isn't much reason for a disclosure

2  statement.  This is not the type of case where a disclosure

3  statement will be particularly informative to anybody, and in

4  particular to Mr. Lynch, the only voting party besides the two

5  plan proponents.

6          And accordingly, I believe that in addition to

7  collapsing the hearing on the disclosure statement's adequacy

8  with the confirmation hearing, one could have the same document

9  be the disclosure statement and the plan, although as a heads

10  up, I've suggested two or three areas where the petitioning

11  creditors/plan proponents may want to add a little more

12  language to the plan so that there wouldn't be much of an

13  issue, at least on my preliminary review, of the plan also

14  passing muster as the disclosure statement.

15          It is only under 1125(e) also, that there is that type

16  of exculpation in addition to any exculpation that the Court

17  might order as part of a confirmation order.  Although, of

18  course, this isn't a public company, it's a point worth noting.

19          So I'll look for the order granting the motion, to the

20  extent set forth on the record today, and also authorizing

21  there to be a combined plan and disclosure statement and a

22  combined hearing on approval of the disclosure statement and

23  confirmation of the plan.

24          Did anyone have any comments on the bar date motion?

25          Okay, I will grant that motion also.  So you can email

1   that order to chambers, Mr. McDermott.

2            MR. MCDERMOTT:  I'll be happy to do that.  A couple of

3   smaller things.  One item I am going to include in the

4   procedures motion is some language requiring confidentiality

5   with respect to the updates that we're going to be providing to

6   Mr. Lynch via email.

7            THE COURT:  The sale -- the sale or other transaction

8   updates?

9            MR. MCDERMOTT:  Exactly.

10           THE COURT:  Okay.

11           MR. MCDERMOTT:  I will also include a form of ballot,

12  which obviously wasn't part of the order that we submitted.  I

13  will endeavor to get that to chambers later today.  But again,

14  I will send these to Mr. Lynch's email as a courtesy to him.

15  And there's a chance I might let it slip till tomorrow morning,

16  but I just wanted to give the Court at least that heads up on

17  that.

18           THE COURT:  Okay.  Well, we'll be looking for that,

19  and it'll get entered promptly.  And again, as I've said now

20  two or three times, the original plan's been on file since the

21  15th of February.

22           MR. MCDERMOTT:  Yes.

23           THE COURT:  Mr. Lynch is fully informed of that or

24  certainly could easily get a copy off of the court's ECF.  And

25  I do not believe that the full twenty-eight days is, therefore,

1    necessary for the confirmation hearing.

2            MR. MCDERMOTT:  Yeah, when we served it, too, he had

3    counsel, and we of course sent it then.

4            I will also put in the order, if it's okay with Your

5    Honor, that we will endeavor to file and serve the amended and

6    restated plan and disclosure statement by Wednesday.  I want to

7    give myself at least the little bit of time here to beef it up,

8    if that's okay with the Court?

9            THE COURT:  That's fine.  And again, it's going to be

10   served by email, so it'll be instantaneous.

11           MR. MCDERMOTT:  It will be.  Last point which is a

12   question.  We had, in the bar date motion, requested the 24th

13   of March.  Would it be possible to make it coterminous with the

14   confirmation hearing, March 20th?

15           THE COURT:  Yes, if -- again, if the notice of the bar

16   date goes out on Wednesday.

17           MR. MCDERMOTT:  That I think we can get out either

18   today or tomorrow.

19           THE COURT:  Okay, that's fine.

20           MR. MCDERMOTT:  I don't believe we have anything

21   further from our side, Your Honor.

22           THE COURT:  Okay.  Does anyone else have anything to

23   say on the case?

24           All right.  So I'll see you all on the 20th, then.

25           MR. MCDERMOTT:  Thank you, Your Honor.

KIRWAN OFFICES S.A.R.L.                    22

1        THE COURT:  Okay, thanks.

2        MR. MCDERMOTT:  Bye.

3     (Whereupon these proceedings were concluded at 10:46 AM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              I N D E X

3    RULINGS:                                      PAGE    LINE

4    Motion to establish confirmation              15       7

5    procedures is granted as modified.

6    Bar date motion is granted.                   19       25

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Penina Wolicki, certify that the foregoing transcript is a
true and accurate record of the proceedings.

_____

Penina Wolicki (CET-569)

AAERT Certified Electronic Transcriber

eScribers

352 Seventh Ave., Suite #607

New York, NY 10001

Date:  March 3, 2017

KIRWAN OFFICES S.A.R.L.
Case No. 16-22321-rdd

February 27, 2017

## A

ability (1)
12:25
absolutely (1)
6:18
accept (4)
6:9;9:19;10:3,4
access (1)
7:1
accordingly (1)
19:6
act (1)
7:5
Activities (2)
18:14,25
actually (3)
10:19;12:11,17
add (3)
12:24;13:16;19:11
addition (2)
19:6,16
address (8)
5:18;6:2,2,2,4,10,
16;13:20
adequacy (1)
19:7
advise (1)
6:5
ADVISORY (1)
4:11
affect (2)
9:14;15:11
affected (1)
13:23
affects (1)
9:15
affirmative (1)
15:1
again (7)
13:22;14:16;
18:17;20:13,19;21:9,
15
aggregate (1)
13:6
ago (1)
6:15
agree (1)
18:8
agreements (1)
11:4
Air (1)
18:22
allowed (1)
9:5
alternatives (1)
10:23
although (7)
5:17;7:3;12:13,19;
14:19;19:9,17
altogether (1)
12:15

always (1)
8:23
amended (3)
7:10,10;21:5
among (2)
6:22;7:22
amount (2)
9:2;16:10
amounts (1)
9:7
Amster (2)
16:12;17:15
ANDREI (1)
4:15
Angeles (1)
4:5
App (1)
17:14
appear (1)
12:4
appearance (1)
5:8
appearing (1)
7:21
appears (4)
9:25;12:6,9;15:20
application (1)
7:23
appreciate (3)
9:12,13;11:17
apprised (1)
7:6
appropriate (2)
12:1;16:17
approval (3)
5:22;8:13;19:22
April (1)
15:11
areas (1)
19:10
argument (1)
12:12
Arps (2)
5:4;7:25
aspect (1)
9:16
assert (1)
9:5
asset (1)
15:11
Associates (5)
16:13;17:14,15,
25;18:22
assume (2)
6:22;14:25
assumed (1)
8:17
Attorneys (2)
4:3,12
authorities (1)
17:5
authority (3)
11:21;16:1,3

authorizing (1)
19:20
Avenue (1)
4:4
aware (1)
7:12

## B

background (1)
6:19
ballot (4)
14:17,18,20;20:11
ballots (1)
14:15
Bank (1)
17:16
Bankr (10)
16:13;17:11,11,13,
25;18:11,12,13,15,
23
bankruptcy (6)
16:1,3;17:1,20;
18:19,21
bar (6)
5:15;9:3,9;19:24;
21:12,15
based (3)
5:23;12:7;17:4
basic (1)
7:25
basically (1)
6:6,9
basis (1)
8:7
beef (3)
12:21;13:15;21:7
behalf (2)
5:4;7:5
behind (1)
6:19
Bel (1)
18:22
Bernstein (2)
16:12,14
besides (3)
7:10;13:23;19:4
BIANCAMANO (1)
4:7
bit (3)
8:6,8;21:7
Block (1)
5:22
both (4)
6:2;9:3,12;12:1
BR (10)
16:13;17:13,15,16,
25;18:11,12,13,15,
22
brief (1)
14:23
briefly (1)
7:16

business (4)
11:25;15:22;16:2,
18
Bye (1)
22:2

## C

CA (2)
4:5;17:11
can (13)
6:5;10:10;12:13,
14,20;13:4,6,13;
14:17,20,20;19:25;
21:17
Candy (1)
17:13
capital (3)
15:13,14;16:6
carefully (1)
6:19
carry (3)
11:12;14:17;15:19
case (24)
7:20;10:13;11:3;
12:6,7,19;14:2;
15:17;16:2,2,5,6,7,7,
9,11,12,15;17:2;
18:2,7,25;19:2;21:23
cases (2)
10:15;16:18
casting (1)
14:16
caused (1)
15:10
certainly (4)
9:8;12:13,14;
20:24
chambers (2)
20:1,13
chance (1)
20:15
change (1)
5:17
changes (1)
6:20
Cir (1)
17:14
circumstances (3)
9:19;12:1;15:20
cited (4)
16:5,6;17:5;19:1
citizen (1)
6:7
claims (1)
9:6
Class (13)
10:1,4,5,5,8,14,17;
11:13;14:17;15:19;
18:3,5,7
classes (1)
16:24
clear (9)

9:22;10:14;15:7,
12,17,21;16:8;18:1,6
clearly (1)
17:2
clients (2)
6:12;11:8
Co (1)
17:13
Code (5)
9:20;11:11,24;
17:1;18:19
collapsing (1)
19:7
Collier (7)
15:25;16:3;17:18,
20,21;18:17,21
Colo (1)
17:17
Colony (1)
17:10
colors (1)
11:19
combination (1)
16:10
combine (3)
12:9;15:23;16:14
combined (3)
14:4;19:21,22
comfortable (1)
14:2
comment (1)
8:4
comments (5)
7:18;8:5,16;9:13;
19:24
committed (1)
13:5
company (2)
12:6;19:18
compliance (1)
7:25
concerned (2)
10:1;11:21
concerns (1)
8:25
concluded (1)
22:3
confidentiality (1)
20:4
confirmation (15)
5:14;7:9,19;8:8,
16;11:22;13:9;14:3,
4;15:24;19:8,17,23;
21:1,14
consistent (1)
14:25
context (1)
12:8
contrary (1)
11:23
convention (1)
6:9
cooperative (1)

KIRWAN OFFICES S.A.R.L.
Case No. 16-22321-rdd

February 27, 2017

8:23
**copy (2)**
5:16;20:24
**correspondence (2)**
6:15;7:4
**cost (1)**
18:9
**coterminous (1)**
21:13
**counsel (5)**
5:21,23;6:25;7:23;
21:3
**count (1)**
18:5
**County (1)**
17:12
**couple (1)**
20:2
**course (2)**
19:18;21:3
**COURT (39)**
5:2,6,12;6:21;7:7,
14,17;8:17,21;9:9,
12;10:11;11:14,21;
12:18;13:3,22;14:1,
7,9,12,15,22;15:3,5,
22;16:1;19:16;20:7,
10,16,18,23,21:8,9,
15,19,22;22:1
**CourtCall (1)**
7:3
**courtesy (1)**
20:14
**courtroom (1)**
5:7
**court's (1)**
20:24
**cram (2)**
10:16;18:4
**creditors (12)**
5:5;7:22;8:6,11,
12,13;9:2,17,23;
13:1;15:15,16
**creditors' (1)**
5:13
**creditors/plan (1)**
19:11
**CRUTCHER (1)**
4:2
**current (1)**
12:6

**D**

**date (8)**
5:15;9:3,10;14:5,
13;19:24;21:12,16
**days (1)**
20:25
**debtor (6)**
7:21;8:1;11:8;
12:8;15:9;18:4
**debtor's (1)**

7:23
**declaration (2)**
14:24;15:2
**declined (1)**
16:14
**deemed (5)**
9:23;10:3,4,6;
16:25
**Deitz (1)**
14:25
**Del (1)**
17:25
**developments (1)**
7:10
**dicta (1)**
17:17
**direction (1)**
10:21
**disbursements (2)**
8:1,2
**disclosure (35)**
9:18,21,22;10:12,
17;11:16,20,22;12:4,
17,20;13:8,15;14:4;
15:23;16:21;17:4,7,
10,19,24;18:3,8,16,
18,19,20;19:1,2,7,9,
14,21,22;21:6
**discussed (4)**
8:5,9;15:25;16:9
**discusses (1)**
16:4
**discussing (1)**
7:24
**discussion (1)**
12:21
**dispute (1)**
17:22
**District (1)**
6:5
**DNJ (1)**
17:13
**document (4)**
9:3;12:22;13:14;
19:8
**documents (1)**
18:21
**done (1)**
16:18
**down (2)**
10:16;18:4
**DUNN (1)**
4:2

**E**

**earlier (1)**
15:8
**earnest (1)**
10:25
**easily (1)**
20:24
**ECF (1)**

20:24
**educate (1)**
12:17
**efforts (1)**
10:25
**either (4)**
9:23;12:22;16:24;
21:17
**elide (1)**
10:20
**elides (1)**
10:2
**else (2)**
13:16;21:22
**email (11)**
6:2,4,6,7,10,12,16;
19:25;20:6,14;21:10
**emailed (1)**
7:2
**emails (2)**
7:24;8:2
**endeavor (2)**
20:13;21:5
**engagement (1)**
5:24
**ensure (1)**
7:1
**entered (1)**
20:19
**entirely (1)**
12:16
**entitled (3)**
17:3;18:3,7
**ESQ (3)**
4:7,8,15
**establish (1)**
5:14
**even (7)**
10:15;11:11;
12:12;15:13;16:1;
17:3;18:4
**evidence (2)**
6:14;15:1
**Exactly (1)**
20:9
**example (1)**
17:22
**exclusivity (1)**
8:18
**exculpation (2)**
19:16,16
**exculpations (3)**
8:6,7;9:1
**excused (1)**
12:15
**exhibits (1)**
6:13
**experienced (1)**
14:25
**explain (2)**
8:7;13:10
**exploring (1)**
10:23

**expressly (1)**
11:21
**extent (1)**
19:20

**F**

**fact (4)**
6:11;9:14;10:15;
13:24
**factors (1)**
13:23
**facts (1)**
16:19
**fair (4)**
10:18;13:18;
14:19;16:9
**far (3)**
9:7;10:1;11:20
**FD (1)**
4:11
**feasibility (2)**
12:24;13:19
**February (1)**
20:21
**Feldman (1)**
18:12
**few (3)**
6:13,14;7:18
**file (4)**
13:17,20;20:20;
21:5
**filed (4)**
5:21,24;6:3;8:15
**fine (2)**
21:9,19
**first (2)**
7:8;11:20
**follow (2)**
6:4;11:3
**footnote (1)**
16:15
**forego (1)**
16:21
**form (1)**
20:11
**former (2)**
5:21;18:10
**Forrest (1)**
17:25
**forth (1)**
19:20
**frankly (1)**
13:15
**free (1)**
14:9
**full (3)**
8:11;9:4;20:25
**fully (1)**
20:23
**further (2)**
8:15;15:16;18:5;
21:21

**G**

**Ga (1)**
18:15
**general (5)**
7:18;8:4;16:4,7,9
**generally (1)**
7:20
**generically (1)**
18:6
**GIBSON (1)**
4:2
**given (8)**
6:8;9:20;14:2,3,
12;16:14,22,23
**gives (1)**
11:21
**goes (1)**
21:16
**Good (3)**
5:6,12;12:7
**Grand (1)**
4:4
**grant (2)**
15:7;19:25
**granting (1)**
19:19
**Greg (2)**
5:11;7:15
**Gropper (1)**
16:8
**Growth (3)**
16:4,7,9
**guess (2)**
5:17;13:14

**H**

**happen (1)**
13:8
**happy (4)**
13:14,19;14:10;
20:2
**hats (1)**
15:18
**heads (2)**
19:9;20:16
**heard (1)**
7:16
**hearing (13)**
6:14,23,25;11:22,
23;13:8;14:4;15:23;
19:7,8,22;21:1,14
**hearings (3)**
12:10;16:11,14
**held (1)**
17:23
**hesitation (1)**
9:16
**highlighted (1)**
12:2
**Hills (1)**

17:25
holders (1)
  15:19
honest (1)
  12:16
Honor (20)
  5:3,20;6:3,5,14;
  7:3,13,15;8:20;
  10:19;12:12,13;
  13:13,25;14:11,23;
  15:1;21:5,21,25
Hotel (1)
  17:16
hundred (1)
  10:21

**I**

ie (2)
  18:5,19
impact (1)
  8:24
impaired (1)
  18:7
Inc (7)
  16:5;17:13,16;
  18:11,13,14,25
include (3)
  6:3;20:3,11
included (4)
  6:1,11;9:1,6
informative (1)
  19:3
informed (1)
  20:23
injunction (1)
  12:23
instances (1)
  16:16
instantaneous (1)
  21:10
intend (1)
  5:9
intent (1)
  9:4
interest (1)
  12:4
interest- (1)
  15:18
interest-holder (1)
  15:19
interest-holders (2)
  10:1;15:15
International (3)
  4:3;6:8;17:11
into (1)
  6:14
invest (3)
  13:4,5,6
issue (6)
  10:2,12,12,20;
  12:21;19:13
issues (2)

8:25;12:2
item (1)
  20:3

**J**

Jenner (1)
  5:22
Judge (5)
  16:8,12,13;18:15,
  24

**K**

KEITH (1)
  4:7
kind (1)
  10:2
King (1)
  18:13
Kirwan (2)
  5:2,5
known (1)
  9:2

**L**

La (1)
  18:11
language (4)
  9:20;17:6;19:12;
  20:4
Lapidem (3)
  5:4;10:2;14:16
largely (1)
  15:10
last (3)
  5:24;6:13;21:11
later (1)
  20:13
latter (1)
  18:13
law (2)
  10:13;18:2
lawyer (1)
  6:17
lawyers (1)
  9:7
leading (1)
  15:25
least (6)
  9:6;11:11;18:1;
  19:13;20:16;21:7
Levin (1)
  5:22
LEXIS (2)
  17:11,14
Li (1)
  14:9
light (2)
  15:20;18:9
lightning (1)
  10:24

listen (1)
  5:9
little (4)
  8:6,8;19:11;21:7
live (1)
  6:21
LLC (1)
  17:11
LLP (2)
  4:2,11
long (2)
  9:5;11:23
look (2)
  10:16;19:19
looking (5)
  9:25;10:16;18:4,5;
  20:18
Los (1)
  4:5
Luminent (2)
  16:6,7
Lynch (14)
  4:12,18;5:19,21;
  6:1,11,21;11:10;
  13:4,11;14:18;19:4;
  20:6,23
Lynch's (2)
  5:23;20:14

**M**

mail (1)
  6:9
mailing (1)
  6:2
main (3)
  12:11,12,14
major (2)
  5:17,18
March (4)
  14:5,9;21:13,14
Mark (1)
  5:3
Mascini (3)
  5:4;10:2;14:16
matter (1)
  5:8
matters (1)
  13:20
may (12)
  5:20;8:15,15,25;
  9:9;15:10,22;16:16;
  17:3;18:18,18;19:11
maybe (4)
  12:21,24;13:3;
  15:13
McDermott (33)
  5:3,3,15,20;6:24;
  7:12;8:20,22;9:11;
  10:10,18;12:11;13:2,
  13,25;14:6,8,10,14,
  19,23;15:4;20:1,2,9,
  11,22;21:2,11,17,20,

25;22:2
MD (1)
  18:11
mean (1)
  10:11
meant (1)
  8:24
members (1)
  13:5
mentioned (1)
  13:23
mid- (1)
  15:10
midst (1)
  10:23
Mid-Towne (1)
  17:14
might (2)
  19:17;20:15
million (2)
  13:5,6
modified (2)
  5:16;15:7
money (1)
  13:1
more (5)
  8:8;13:10;15:5;
  18:6;19:11
Moreover (1)
  18:1
morning (3)
  5:6,12;20:15
Mortgage (1)
  16:6
motion (21)
  5:13,14;7:7,8;
  9:14,16,18;10:22;
  11:19;12:2;13:24;
  15:6,7,8,8;17:5;
  19:19,24,25;20:4;
  21:12
motion's (1)
  16:20
much (4)
  7:1;10:12;19:1,12
muster (1)
  19:14
myself (1)
  21:7

**N**

name (1)
  9:2
narrow (1)
  17:22
nature (2)
  14:2;16:15
ND (2)
  18:13,15
necessary (4)
  9:19,21,22;13:1;
  21:1

need (7)
  10:17;16:23;17:4,
  9,19,19,24
needs (1)
  18:3
NEWMAN (1)
  4:8
next (1)
  12:18
none (2)
  7:12,12
noon (1)
  14:13
Northwest (2)
  18:14,25
Norton (2)
  18:15,24
note (4)
  7:4,18;8:3;17:16
noted (3)
  16:15;18:24,24
notice (6)
  5:16,21;6:11,22,
  25;21:15
noting (1)
  19:18
notwithstanding (2)
  15:22;16:20
number (1)
  5:7

**O**

object (2)
  10:6;17:3
objected (1)
  13:24
objection (1)
  11:18
objections (1)
  14:13
obviously (6)
  6:24;9:5;10:6;
  13:7;17:8;20:12
odd (2)
  7:20;8:3
off (1)
  20:24
Office (4)
  5:11;7:16;8:14,23
Offices (1)
  5:2
Ohio (1)
  18:13
one (19)
  5:6;7:8,20;9:16;
  11:7,25;12:3,9,12,
  12,13;13:5;15:21;
  16:22;17:3,9,22;
  19:8;20:3
ones (1)
  9:6
one's (1)